MAGGIE E. RYAN *et al.*

*v.*

THE FIRST NATIONAL BANK OF SPRINGFIELD.

*Filed at Springfield January 13, 1894.*

1. ALTERATION OF INSTRUMENTS—*as affecting their validity.* While the general rule is that the unauthorized alteration of a contract by a party to it renders the same void, the rule has been so far relaxed, at least in this country, that such an alteration, even though made by a party to the contract, will not destroy its validity, unless the alteration is found to be material.

2. Not every change in a bill or note amounts to an alteration. If the legal effect is not changed the instrument is not altered, although some change may be made in its appearance, either by the addition of words which the law will imply, or by striking out words of no legal significance.

3. The effect of an alteration in a written instrument depends upon the nature of the alteration, and the person by whom and the intention with which it was made. If neither the rights nor the interests, duties or obligations of either of the parties are in any manner changed, an alteration may be considered as immaterial.

4. In this case, a promissory note was made payable to a bank, which required a guaranty of a third person, but the latter signed his name just below the signature of the makers, and the note was so delivered to the bank. Shortly after, such third person came to the bank and had his name erased as one of the makers, and had it written in the note as the payee, at the same time assigning it back to the bank with a guaranty of payment: *Held,* that the change in the note did not affect its validity, as it did not change the rights of any of the parties.

5. INDORSER—GUARANTOR—*place of signing.* Where a party required to indorse a note to a bank before it is accepted and discounted, signs his name after the names of the makers, but after its delivery has his

name erased and placed on the back of the note, he may show that his signature on the face of the instrument was placed there, not as a maker, but for the purpose of binding him as indorser or guarantor.

6. Where a person not the payee signs his name on the back of a promissory note, he will thereby assume the liability of a guarantor. If he signs on the face of the note it will have the same effect as if he had signed his name on the back, where it is intended that he shall guarantee the payment of the note.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAS. A. CREIGHTON, Judge, presiding.

Messrs. PATTON & HAMILTON, for the appellants:

There being no consideration moving from the bank to the appellants, this action can not be maintained under the common counts.

The change in the name of the payee was a material alteration of the note, and avoided it, whether it was made with a fraudulent intent or not. *Aldrich* v. *Smith*, 37 Mich. 468; *Bank* v. *Fricke*, 75 Mo. 178; *Vanauken* v. *Hombeck*, 2 Green, (N. J.) 178; *Nicholson* v. *Combs*, 90 Ind. 515; *Neff* v. *Homer*, 65 Pa. St. 327; *Fulmer* v. *Seitz*, 68 id. 550; *Lamb* v. *Paine*, 46 Iowa, 550.

Any change in the personality, number or relations of the parties is, as a general rule, a material alteration. Daniel on Neg. Inst. (3d ed.) sec. 1387.

Changing the name of the payee is a material alteration. *Broughton* v. *Fuller*, 9 Vt. 173; *Stoddard* v. *Penniman*, 108 Mass. 366.

Any alteration, however slight, if it changes its terms, will have the effect to render it void. *Pankey* v. *Mitchell*, Breese, 383; *Gardner* v. *Harback*, 21 Ill. 129; *Wyman* v. *Yeomans*, 84 id. 403; *Burwell* v. *Orr*, id. 465; *Pahlman* v. *Taylor*, 75 id. 629; *Gillett* v. *Sweat*, 1 Gilm. 475; *Angle* v. *Insurance Co.* 92 U. S. 330; Daniel on Neg. Inst. secs. 1373-1411; 3 Randolph on Com. Paper, sec. 1742.

Messrs. PALMER, SHUTT & DRENNAN, and Mr. JAMES H. MA-
THENY, for the appellee.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This is an action of assumpsit, by appellee, against appel-
lants, begun in the circuit court of Sangamon county. It has
been tried three times in that court, and as often heard in the
Appellate Court for the Third District. The last judgment
of the circuit court was for plaintiff, for the amount of the
note sued on, which has been affirmed by the Appellate Court.

On August 30, 1884, appellants J. F. Ryan and W. J. Riley
contracted with one P. P. O'Donnell for the purchase of cer-
tain chattel property, agreeing to pay him therefor $4200.
They executed their promissory note of that date for that sum,
payable to the order of the First National Bank of Springfield,
appellee, due ninety days after date, and obtained the signa-
tures thereto of Maggie Ryan and Mary Riley as sureties.
The evidence tends to show, and for the purposes of this opin-
ion the fact is accepted as settled, that it was understood by
the makers of this note and O'Donnell, that by delivering it
to the bank the money would be realized with which to pay for
the goods purchased. After it was signed by all the makers,
J. F. Ryan and W. J. Riley took it, and shortly afterward
handed it to O'Donnell. The three then went to the bank,
expecting to discount it and get the cash. The cashier, how-
ever, declined to take it without the indorsement of O'Donnell,
who, after some hesitancy, consented to do so. Instead of
signing his name on the back of the paper he wrote it at the
foot of the note, after the signatures of the makers. The bank
then discounted it the amount of interest it called for for the
ninety days,—$86.40. O'Donnell insisting that he was to
have the full amount of $4200, Ryan and Riley went out and
got the $86.40, and paid it to the bank. It thereupon placed
to the credit of O'Donnell $4200, and the parties left, Ryan
and Riley immediately taking possession of the goods pur-

chased.  In a few minutes O'Donnell returned to the bank and told the cashier that his name should have been signed on the back of the note, and that he did not want to be a party to it as a maker.  The cashier told him it made no difference as to his liability, but he insisted on having it changed, and the cashier finally erased his signature at the foot of the note, wrote his name before the words, "The First National Bank of Springfield," and placed the bank's guarantee stamp on the back, which O'Donnell signed.  It thus appears that as originally written the note was payable to appellee, signed by appellants.  As first changed it appeared to be payable to appellee, signed by appellants and O'Donnell, but was in fact payable to appellee, signed by appellants and indorsed by O'Donnell.  As last changed it was made payable to O'Donnell, but simultaneously indorsed and guaranteed by him to appellee.

On each of the trials below the defense relied upon was, that the note had been so altered after its execution, without the consent of the makers, as to discharge them from all liability upon it, and the only substantial question before us for decision is, whether or not, on the facts above stated, that defense was made out.

The last trial was upon a declaration containing a special count describing the note as originally made, and the common counts.  The note was offered in evidence as finally changed, and the defendants objected.  The objection was overruled, and this, appellants insist, was error.  The execution of the note was proved, and it is clear that if it was not rendered invalid by alterations it was admissible under the common counts.  *Boxberger* v. *Scott*, 88 Ill. 477.

Recurring, then, to the principal question, it seems to be well settled that while the general rule is that the unauthorized alteration of a contract by a party to it renders it void, the rule has been so far relaxed, at least in this country, that such an alteration, even though made by a party to the con-

tract, will not destroy its validity unless the alteration is found to be material. (2 Parsons on Contracts, 720.) As expressed by Mr. Daniels in his work on Negotiable Instruments, (vol. 2, 359): "Not every change in a bill or note amounts to an alteration. If the legal effect be not changed the instrument is not altered, although some change may have been made in its appearance, either by the addition of words which the law would imply, or by striking out words of no legal significance." This court said in *Vogle et al.* v. *Ripper*, 34 Ill. 106: "The effect of an alteration in a written instrument depends upon its nature, the person by whom and the intention with which it was made. If neither the rights or interests, duties or obligations, of either of the parties are in any manner changed, an alteration may be considered as immaterial." The controlling question, then, in this case is, were the changes made in the note sued upon, or either of them, material, within the meaning of the law.

As shown by the authorities already cited, a change, to be material, must in some way affect the legal rights of the parties as they were expressed before the change was made. Daniels says, citing *Holland* v. *Hatch*, 15 Ohio St. 464: "And in no case is a change in the phraseology of the instrument material when it does not essentially change its legal effect." (See, also, Parsons on Bills and Notes, 560.) It is also competent, in determining whether a change has materially affected the rights of the parties, to take into consideration their intention when the agreement was executed. Thus, the date of a note may be changed so as to make it correspond with the intention of the parties, without affecting its validity. (*Dukes* v. *Franz*, 7 Bush, 273; *Hervey* v. *Hervey*, 15 Me. 357; Parsons on Bills and Notes, 569, 570.) In *Ames* v. *Colburn*, 11 Gray, 300, METCALF, J., said: "The alteration of the date of the note was made by the promisees without the knowledge or express consent of the promisor, but as the arbitrator has found that it was made without any fraudulent intention, and

23—148 ILL.

merely to correct a mistake and make the note such as both parties intended it should be and understood it was, we are of opinion, upon the authorities, that the note was not vacated by the alteration, and the plaintiff is entitled to judgment on the award." In *Derby* v. *Thall,* 44 Vt. 413, the defendant was surety on a note payable to the plaintiff. Through a mistake the plaintiff's given name was wrongly written in the body of the note, and he, after it was delivered to him, with the consent of the principal maker but without the knowledge or consent of the defendant, changed the name of the payee so as to correct the mistake, and it was held the alteration was not material, in the sense of invalidating the instrument. As originally written it was payable to Franklin Derby. By the change it was made payable to Francis E. Derby. The court said: "The change made no alteration in the liability or obligation of the maker. There was no change in the party to whom the obligation was assumed. The only effect of the alteration was to correctly describe the party to whom the promise was in fact understandingly made." The reasoning applies with full force to this case. It is not denied that it was the intention of appellants when they executed the note, to obligate themselves to pay "to the order of the First National Bank of Springfield, Illinois." That was the language of their contract. That they are being called upon by this action to pay to a different person or company is not pretended. The change of the payee and the indorsement and guaranty had therefore no other effect than to carry out the intention of the parties when they signed the note.

. But aside from the question of intention, we are unable to see how the legal liability of the makers was changed. It is too clear for argument that the placing of the name of O'Donnell at the foot of the note was, in the light of the attending facts, no change whatever. He was requested to indorse the note, and he signed his name for that purpose, and no other. While the word "indorse" means a writing on the back, it can

always be shown that a signature on the face of an instrument was placed there, not as a maker, but for the purpose of binding the party as indorser, only. (*Herring* v. *Woodhull,* 29 Ill. 92.) The legal effect, then, of O'Donnell signing his name on the face of the paper as indorser was precisely the same as though he had signed it on the back, and no one would pretend that the latter would have amounted to an alteration of the instrument. If he had signed it upon the back in the first place, not being the payee the bank could have written over his signature just such a guaranty as now appears over it, and the rights of all the parties would have been just the same as they now are. A third party, by indorsing a promissory note, becomes liable as a guarantor. (*Camden et al.* v. *McKay et al.* 3 Scam. 437 ; *Boynton* v. *Pierce,* 79 Ill. 145.) Clearly such an indorsement would have been legitimate, and in no sense an alteration. It only remains, therefore, to be determined whether making the note payable to O'Donnell instead of the bank, and at the same time assigning it back to it with the guaranty, changed "the rights or interests, duties or obligations, of either of the parties."

Was the legal effect of the obligation, as between the bank and makers, thereby essentially changed ? As originally made, it would have been the duty of the makers to pay the bank $4200 at the expiration of ninety days. How can it be said that that duty was either enlarged or diminished by the change? The rights and duties of the bank, as between it and the makers, were precisely the same after as before the change. True, it had also the guaranty of O'Donnell; but that it had a right to obtain, without reference to the change made in the payee. His guaranty neither enlarged nor diminished the rights of the bank against appellants.

Counsel say O'Donnell became the indorser, and not the guarantor, of the note; that being only an indorser, the bank was required to take prompt action to enforce payment from the makers in order to hold him liable, and in this way, they

say, the makers were deprived of "the right to indulge the presumption that the note would be carried, if desired." The right would be a most precarious one, even on the position assumed. But the complete answer to the argument is the fact that by the express terms of his indorsement O'Donnell became a guarantor, and not a mere indorser. The language of the indorsement is: "For value received, I hereby guarantee the payment of the within note at maturity," etc.

Cases are cited in which it was held that changing the name of the payee in a promissory note was a material alteration. With those cases we find no fault whatever. They were decided upon a state of facts which showed that the change would or might have resulted in imposing other duties and obligations upon the parties.

It seems to be thought that the fact that two of the makers of this note signed it as sureties should affect the decision of the case. We do not think so. On this record, if the change amounted, in law, to a material alteration of the note, all the makers were discharged; if immaterial, the obligation of the sureties is in no way changed.

Whatever may be said as to the propriety of the conduct of the cashier of the bank when tested by the rules of business, it clearly appearing that no wrong was intended, and there being nothing in the record to show that appellants have been or could have been injured by that conduct, we are of the opinion that the validity of the note was not destroyed.

The rulings of the circuit court as to the competency of the evidence, and in giving and refusing instructions, were in conformity with this view, and to follow counsel in their argument on that branch of the case would be but to repeat what we have already said.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*