LEWIS ETHERIDGE ET UX. *v.* CHARLES GALLAGHER ET AL.

1. PROMISSORY NOTES. *Payable to order, or to bearer. How title passed.*
   Under our statute the title to a promissory note, whether payable to order or assigns or not, is transferred by indorsement; but the title to a promissory note payable to bearer is vested in each successive holder by the original promise of the maker to the bearer, and not by the assignment of the promise.

2. SAME. *Indorsement. Defenses against holder. Section 2228 of the code of 1871 construed.*
   Section 2228 of the Code of 1871 provides that "all promissory notes, and other writings, for the payment of money or any other thing, may be assigned by indorsement, whether the same be payable to order or assigns or not; * * * and in all actions on any such assigned promissory note, bill of exchange, or other writing for the payment of money or other thing, the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and sets-off made, had, or possessed against the same previous to notice of assignment, in the same manner as though the suit had been brought by the obligee or payee." *Held*, (1) that the above statute applies as well to indorsements in blank as to special indorsements; (2) that it refers to assignments made in the due course of business, for value, and before maturity; (3) that it only changes the law-merchant so far as to

allow the promisor to make any defenses existing before notice of assignment against a remote holder, by indorsement before maturity, which he could have made against the payee.

3. Same. *Indorser remote from holder, defending for failure of intermediate consideration. Case in judgment.*

E. and wife sold a lot to C., and took in payment a promissory note payable to their order, which was transferred by indorsement in blank to W. F. E., and by him transferred for value, after due, to G. A bill was filed by G. to subject the lot sold by E. and wife to C. to the payment of the note held by him. E. and wife filed a cross-bill, alleging that the consideration for which the note was transferred to W. F. E. had failed, and that the latter was insolvent, and claiming that E. and wife had a superior right to the note, and that the lot should be sold for their benefit. G. demurred to the cross-bill for want of equity, and his demurrer was sustained by the court. *Held,* that the action of the court was correct.

Appeal from the Chancery Court of Noxubee County.

Hon. L. Brame, Chancellor.

A statement of the case will be found in the opinion of the court.

*Thomas Christian* and *Foote & Foote,* for the appellants.

1. Gallagher is not a *bona-fide* holder of the note without notice of the equities between the previous parties to the instrument; for he took it after maturity, and, being a dishonored note, he takes it subject to all the equities existing between the prior parties, and with no better right than his immediate indorser had.

2. Our statute overthrows the common-law doctrine that the *bona-fide* holder of negotiable paper, taken in the usual course of business, holds it clear of equities between the prior parties, and it makes no distinction in this regard between paper transferred before or after due. But upon the principle of the common law, Gallagher could have no higher right than Eiland, the note having been transferred to him after due. Chitty on Bills, ed. 1842, 216; Story on Prom. Notes, sec. 178.

3. That such indorsement is a separate contract is well-established law. Story on Prom. Notes, sec. 135. Gallagher trusted to the indorsement of Eiland, and though the consid-

eration for the transfer from Etheridge to Eiland has failed, he still has his remedy against him whose indorsement he trusted. *Allen* v. *Agricultural Bank*, 3 Smed. & M. 48.

4. The court below decided this case upon the theory that, because a note was indorsed in blank, it must be governed by the rules in regard to notes payable to bearer, and that Eiland's indorser took it clear of all equities between him and Etheridge. But our High Court of Errors and Appeals has decided that notes indorsed in blank were not negotiable at common law, but are made so by our statute. And the court further decided that notes payable to bearer do not come under the provisions of the statute. *Craig* v. *The City of Vicksburg*, 2 Geo. 216. In that case it is said that the holder of a note payable to bearer claims his title to the note by virtue of its being payable to bearer, and of the promise and contract between the maker and the bearer. See, also, *Stokes* v. *Winslow*, 2 Geo. 518; 5 Geo. 64; *Winstead* v. *Davis*, 40 Miss. 785. The effect of a blank indorsement is fully examined by our Supreme Court, in *McLemore* v. *Hawkins*, 46 Miss. 715. The only distinction there made between a blank indorsement and one in full is that the former is more negotiable than the latter — that is, it may pass from hand to hand without further indorsement.

*Jarnagin & Jarnagin,* for the appellees.

1. Admitting that the failure of consideration could be set up as a defense between Etheridge and wife, the indorsers, and Eiland, their immediate indorsee, it does not follow that it would be a good defense to the note as between the first indorser and a remote indorsee. Daniel, on Negotiable Instruments, says: " The rule which admits inquiry into the consideration of negotiable paper between the original payor and payee extends to admit such inquiry in any suit between parties between whom there is a privity. That is to say, between the immediate parties to any contract evidenced by the drawing, accepting, making, or indorsing a bill or note, it may be shown that there was no consideration, or that the

consideration has failed, or a set-off may be pleaded; but as between other parties remote to each other, none of these defenses are admissible." 1 Dan. Neg. Inst., 135, 136; Byles on Bills, 193, 194. Between remote parties to each other two distinct considerations must be inquired into in order to perfect a defense against the holder of a note, as stated by Daniel: "The consideration which the defendant received for his liability, and not that which the plaintiff gave for his title; and if any intermediate holder gave value for the instrument, that intervening consideration will sustain the plaintiff's title." 1 Dan. Neg. Inst. 135, 136; Byles on Bills, 236; 1 Pars. on Notes & Bills, 192; Story on Bills, sec. 188.

2. A note payable to order, indorsed in blank by the original payee, thereby becomes a note payable to bearer, and will pass from hand to hand by mere delivery, and is governed by the commercial law as a negotiable instrument. As to indorsements in blank, it was said by Lord Mansfield, in *Peacock* v. *Rhodes*, 2 Dougl. 663: "I see no difference between a note indorsed in blank and one payable to bearer. They both go by delivery, and possession passes property in both cases." It is a well-settled principle that, where there are several indorsements in blank, the holder may fill up the first one to himself, or he may deduce title through all of them. 5 Munf. 388; 11 Pick. 316; 8 Pick. 48; 12 Mass. 7, 8. As to the effect of an indorsement in blank, we refer to the following authorities: 1 Dan. Neg. Inst. 512; Story on Bills, 228, 230; Byles on Bills, 214, 215, 227; 2 Pars. on Notes & Bills, 19, 20. The effect of the blank indorsement of Etheridge and wife was to make the note thereafter payable to bearer. A bill or note payable to bearer, or indorsed in blank, may be transferred, like currency, by mere delivery. 1 Dan. Neg. Inst. 493; Byles on Bills, 227. Etheridge and wife, having given the note its negotiable character, and made it transferable like currency, are estopped from setting up a claim, as against Gallagher, to the note or its proceeds, because of the failure of the consideration between themselves and Eiland.

SIMRALL, C. J., delivered the opinion of the court.

Lewis Etheridge and wife sold and conveyed a lot in the town of Macon to Fines E. Carlton, for $4,000, $1,000 paid on the spot, and the balance in installments of one, two, and three years, represented by promissory notes due respectively the first of January, 1874, 1875, and 1876. Etheridge and wife gave bond to make the conveyance on complete payment of the money. Etheridge and wife transferred by indorsement the note falling due January 1, 1874, to William F. Eiland, who negotiated it for a valuable consideration, and indorsed and delivered it to Charles Gallagher.

Gallagher, with R. I. Mosely, who was a holder of another of the notes, brought this bill in chancery against the heirs of Carlton, he having died (and there being no personal representative), Etheridge and wife, and Eiland, having for its object an enforcement of the equitable mortgage resulting from this sort of sale, for the payment of the notes held by them. They allege that Carlton died insolvent, leaving no personal estate, and that no administrator has been appointed.

Etheridge and wife, with their answer, exhibited a cross-bill against all the parties named, in which they allege that they transferred the note due in 1874, by blank indorsement, to Eiland, in part payment for the north half of a certain square of ground in Macon, which they bought and took a deed to from Eiland, at the aggregate price of about $4,000. That the title to the property had entirely failed, and that they had lost the property and possession, together with valuable improvements which they had erected upon it. They further charge that at the time of the sale Eiland had but an equitable title, the legal title being in Mrs. Phillips, who had sold to him and given her obligation to convey when the money was paid. That Eiland made default, and that under judicial proceedings instituted by Mrs. Phillips in the Chancery Court the property was sold to pay the balance of Eiland's indebtedness to her. By reason whereof the consideration for which they indorsed the note to Eiland has entirely

failed. They alleged that Eiland is insolvent, and the covenants in his deed to them are worthless; that they indorsed the note in blank to Eiland, who transferred by like indorsement for a valuable consideration, after it was due, to Gallagher. On these facts they claim a superior right to the note and the money due upon it to Gallagher, and that any money pro-duced by sale of the property sold by them, as before stated, to Carlton, shall be decreed to be paid to them, and not to Gallagher. Gallagher, by demurrer, raised the question whether the allegations of the cross-bill state a case for relief.

In support of the demurrer the argument of counsel is that the indorsement of the note in blank by Etheridge and wife to Eiland, and his transfer by the like indorsement to Gallagher, passed the instrument free of all equities and defenses between the antecedent parties, because, as it is said, a blank indorse-ment makes the paper current by delivery, and imparts to it all the incidents of a note payable to bearer; and inasmuch as a note payable to bearer is not affected by our anti-commer-cial statute (Code 1871, sec. 2228), therefore Gallagher's title cannot be impeached.

We think that counsel are mistaken both in the premises and the conclusion drawn from them, in view of the facts of this case.

The distinction between the two kinds of notes is that the indorsement of a note, whether payable to order or assigns or not, vests under the statute a legal title in the indorsee; the note to the bearer is payable to any and every successive holder, *bona fide,* not by virtue of an assignment of the promise, but by reason of the original and direct promise moving from the maker to the bearer.

The title of Gallagher came to him through the indorsements of Etheridge and wife and Eiland, and the circumstances that they were in blank in nowise affected his right, or gave a dif-ferent complexion to it than it would have had if the successive indorsements had been special.

That portion of the statute referred to, which allows defenses

of want or failure of consideration, etc., governs those instruments which are assigned by indorsement in due course of business and for value before due. The purpose was to confer on the maker the same benefit of defenses against a remote transferee which he might have set up against the payee, provided the matter of them had accrued before notice of assignment. The law-merchant permitted such defenses between the immediate parties to the contract — as, between the maker and the payee, the indorser and his immediate indorser — but when direct privity ceases, then the right of defense is cut off. Such privity does not exist between the indorser and maker, nor between the indorsee and a prior, but not his immediate, indorser. 1 Dan. Neg. Inst. 135 ; 1 Pars. on Notes & Bills, 176. If Gallagher (under this principle) were pursuing Eiland on his indorsement, it would be competent for the latter to plead any want or failure of consideration which was the inducement of his assignment. But Gallagher, not being the immediate indorsee of Etheridge and wife, has no privity with the contract between them and their indorser, Eiland. The law-merchant, for the encouragement of negotiable instruments, which had proved to be such convenient and necessary auxiliaries of commerce, threw around them very exceptional and peculiar immunities. The most important of these was that the *bona-fide* holder held by a better title than his predecessor — that is, he took the paper absolutely discharged of all equities of which he had no knowledge, existing between prior parties. If he became the owner, by payment of value, whilst the paper was in circulation, his title was unimpeachable, though he took it from a thief who had stolen it from the rightful owner, or from a party who had acquired it by fraud. If he found the paper on the market before it had become discredited, he was not under any duty to inquire how the party proposing to sell it came by it, or what was the consideration between the original parties ; but he could buy in the confidence that his title could not be impeached by any such infirmities. *Grant* v. *Vaughn*, 3 Burr. 1516 ; *Peacock* v. *Rhodes*, 1 Dougl.

633 ; *Murray* v. *Lardner*, 2 Wall. 110.   The statute intended to modify this rule so far, and so far only, as to allow the original promisor to make defenses against a remote holder by indorsement, existing before notice of assignment, which he could have made against the payee.   In all other respects the indorsement has the same legal import which the commercial law attached to the indorsement of inland bills of exchange.

Indorsement has two legal consequences : first, it transfers the title in the paper ; and, second, it creates a conditional contract between the indorser and indorsee, which inures to the benefit of each subsequent holder.   This contract is collateral to that of the maker, and in many respects independent of it.

Eiland's indorsement to Gallagher passed to him the legal ownership of the paper, with a right to go against the maker of the note, and also the prior indorsers, on their collateral and conditional contracts.

There is one circumstance connected with Gallagher's acquisition of the paper to which counsel have not attached sufficient importance — that is, that he purchased the note after its maturity, after it had been discredited.   It is well settled that the purchaser of negotiable paper after its dishonor by being overdue takes it subject to all defenses and equities between the original parties, whether he had notice of them or not.

The statute, as we have seen, conferred that benefit on the maker, as against the indorsee, before maturity.   But where the transfer has been made after maturity, the rights of the transferee are not governed by the statute, but stand on the footing prescribed by the commercial law.

This principle equally applies to notes which are assigned by indorsement, and those payable to bearer and negotiated by delivery.   *Mervin & Sears* v. *Cotton*, 34 Miss. 64; *Winstead* v. *Davis*, 40 Miss. 786 ; *Arento* v. *The Commonwealth*, 18 Gratt. 750 ; *Murray* v. *Lardner*, 2 Wall. 110 ; *Davis* v. *Miller*, 14 Gratt. 6.

In *Andrews* v. *Pond*, 13 Pet. 65, it was said that a party who acquired such paper out of time, after it had been disgraced, "cannot claim the privileges of a *bona-fide* purchaser."

He acquires the title with all the infirmities which attached to it when held by his transferee, and is in no better condition. The principle was well illustrated in *Ashurst* v. *Bank of Australia*, 37 Eng. Law & Eq. 195. There a plea was sustained to the effect that before the transfer to the plaintiff the transferee had become bankrupt, and the note vested in his assignee. And, again, in *Foley* v. *Smith*, 6 Wall. 492, Mrs. Smith indorsed in blank the note of McHattan, and deposited it in the Bank of Kentucky for collection. That bank transmitted the note to the Citizens' Bank at New Orleans for the same purpose. Several months after its maturity one McKnight, who had been acting as the agent of the Bank of Kentucky, withdrew the note and sold it for value to Foley & Co. Mrs. Smith brought suit in Louisiana to foreclose a mortgage which protected this note (the first of a series) and others. Foley & Co. intervened, but were denied any part of the money, because, as expressed by the assignment, "they took the note incumbered with all the equities between the prior parties."

It was at one time seriously doubted whether a bill or note overdue could be negotiated by indorsement at all, so as to enable the indorser to recover upon it in his own name. In *Mitford* v. *Wallcott*, 1 Salk. 129, the judges consulted the merchants, and on their opinion decided that the action would lie. In *Brown* v. *Davies*, 5 Term Rep. 80, and *Taylor* v. *Mathews*, 5 Term Rep. 84, his right to sue was maintained, but subject to all defenses that the original parties could set up, if the suit were between them. See *Allen* et al. v. *Bratton* et al., 47 Miss. 129, 130.

Although Gallagher bought the note when overdue, he acquired a legal title to the paper, and a right to enforce the money out of Carlton, the maker, and those who stood in

privity to him, unless he or they could interpose some defense that would be available against the payees, Etheridge and wife. The dishonor of the note suggested to him that there must be some good reason for it — as, that the maker had some valid defense, such as a want or failure of consideration, or that he was insolvent, and unable to pay. He would be esteemed, therefore, as receiving the note on the credit of Eiland, his immediate indorser, and as taking the risk of all objections that Carlton or his heirs might set up against it. Subject to these incidents, it was a chose in action, a chattel of some value, the subject of sale and transfer.

But Carlton's heirs have interposed no defense to the note. They have said nothing why the property on which the equitable mortgage operates as a security should not be sold for its payment. Etheridge and wife assert a prior right to have the obligation of Carlton enforced for their benefit, and the money due upon it diverted to them, because the consideration on which they sold and indorsed the note to Eiland has failed. In effect, their cross-bill seeks a rescission of the contract between Eiland and themselves, and a restoration of the note which they had parted with. But in the meantime, and before they took any steps to be restored to the condition of the *statu quo*, Eiland had sold the note.

The commercial law, because bills of exchange and promissory notes circulated almost as money in the marts and transactions of trade, invested them with special immunities which enhanced their value. These continued until the instruments were discredited. After that they lost their efficiency and value as the representatives of credit and money, and were turned over to be dealt with according to the general law applicable to the sale of chattels. *Thomas* v. *Kinney*, 8 Ga. 431.

The case of *Lee* v. *Postwood*, 41 Miss. 109, exemplifies that principle. One Magee received a horse in part pay for a slave which had been stolen. The owner of the slave claimed her, and she was given up. Magee afterwards sold the horse

to Riley for $150, and Riley sold to Lee. It was ruled that Lee got a good title, on the principle "that his vendor, while in possession and before the nullification of the contract by the vendee, sold the horse to him for a valuable consideration ; " in such circumstances the title would be good as against the original vendor. The doctrine is very clearly stated by Mr. Benjamin, in his treatise on Sales, page 319, where the facts show that the transaction was a sale, although induced by the fraud of the purchaser, and the possession has been acquired by the vendee. There the contract, as between the parties, is voidable at the election of the seller, but not void. The seller may affirm it and enforce it, or may rescind.

But whilst such are ·his rights, if, in the meantime, and before he makes his election, " his vendee transfers the goods, in whole or part, to an innocent third person, for a valuable consideration, the rights of the original vendor will be subordinate to those of such innocent third person." ·

It would unquestionably have been the right of Etheridge and wife to have rescinded the contract of purchase from Eiland, because of the failure of the consideration and the insolvency of Eiland. The effect would have been an annulment of the title to the note in their indorsee, and a restoration of it to themselves. But it was incumbent on them to have made an election to pursue that course promptly, so that third persons might not be involved by a purchase of the paper. If they postponed action until their indorsee had sold the note to some one who bought for value, their rights become subordinate to such purchaser.

Nor does it matter whether the right to reclaim the note is by reason of the fraudulent practices of the indorsee in obtaining it, or because of a want or failure of consideration given for it. In either case the right of the indorser is superior to that of the indorsee. But the indorsee, having got the · legal title of the paper, and being the apparent owner, could sell the contract and pass the title. And if such sale was made before the indorser took measures to rescind and be re-

stored to his original right, the purchaser from him has a good legal title and an equal equity.

There is a large class of cases in the books which declare that the indorsee of over-due negotiable paper takes the title of his immediate indorser, and no more. In some of them the language is that he takes "subject to all equities between prior parties." Of these are *Foley* v. *Smith*, 6 Wall. 492; *Livermore* v. *Blood*, 40 Mo. 48; *Texas* v. *White*, 7 Wall. 702; *Texas* v. *Hardinburg*, 10 Wall. 68, and cases already cited. Now, in these cases the effort was to impeach the holder's title because he came by the paper through some person who had found it, or had stolen it, or got it fraudulently, and, therefore, did not obtain the title. They all distinctly make the vital fact in the title depend on the time of the acquisition. If the holder paid value before maturity, though he bought from the finder, or the thief, or fraudulent indorser, his title would be good if he had no knowledge of the finding, or theft, or the fraud; but if he bought from the finder or the thief after maturity, he got no better title than his immediate transferrer, which was no title at all.

If Gallagher had purchased the note from some person who had found it, or had stolen it, the cases referred to would apply, and would demonstrate that he could not recover.

The decree sustaining the demurrer to the cross-bill is affirmed.