POLLOCK & BERNHEIMER ET AL. *v.* SIMMONS BROTHERS ET AL.

1. FRAUDULENT SALE. *Purchase in part on credit. Promissory note. Assignment. Anti-commercial statute. Code 1882, § 3503.*

   Notwithstanding our anti-commercial statute (code 1892, § 3503), a buyer of property from one who fraudulently purchased it may be a *bona fide* purchaser, although he may not have fully paid the purchase price which he promised therefor. He is such a purchaser where, before the notice of his vendor's fraud, he gave his promissory note for the credit part of the purchase price, and the note was transferred by the payee to the latter's *bona fide* creditor, and the maker of the note took it up and substituted for it his new note payable to such creditor, he and the creditor acting in good faith.

2. SAME. *Bona fide subsequent purchaser. Actual payment.*

   In such case the defrauded party cannot hold the maker of the notes liable as a trustee *mala fide* on the ground that he is not a *bona fide* purchaser to the extent to which he has not paid for the property.

FROM the chancery court of Prentiss county.

HON. BAXTER McFARLAND, Chancellor.

The appellants, Pollock & Bernheimer and others, were complainants in the court below. Simmons Brothers and others, including S. M. Barnett, now appellees, were defendants in the chancery court. The decree of that court was in favor of the

defendants, and the complainants appealed.  The facts are sufficiently stated in the opinion of the court.

The anti-commercial statute referred to is as follows:

"3503 (1124).  *Promissory notes, other writings, and the vendor's lien assignable; defenses.*—All promissory notes, and other writings for the payment of money or other thing, may be assigned by indorsement, whether the same be payable to order or assigns or not, and the assignee or indorsee may maintain such action thereon, in his own name, as the assignor or indorser could have maintained; and in all actions on any such assigned promissory note, bill of exchange, or other writing for the payment of money or other thing, the defendant · shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and sets-off made, had, or possessed against the same previous to notice of assignment in the same manner as though the suit had been brought by the payee; and the assignee or indorsee of any such instrument may maintain an action against the person or persons who may have indorsed the same, as in case of inland bills of exchange; but when any debt shall be lost by the negligence or default of an assignee or indorsee, ·the assignor shall not be liable on the assignment or indorsement.  The assignee of a claim for the · purchase money of land may enforce the vendor's lien as the vendor could."

*McWillie & Thompson*, for appellants.

Barnett was not an innocent purchaser, for several reasons:

1. He neither paid, nor did he agree to pay, full value for the goods.  The sale to him, in part at least, was voluntary and a gift.  It will be seen that the store fixtures, worth $175, were confessedly a gift.  But the case is worse than that; he purchased, according to the undisputed testimony, something over $7,200 worth of goods, and he did not pay, or assume to pay, counting both payment and assumptions, but $5,204 therefor.  The conveyance to him, therefore, was voluntary

and a gift to the extent, speaking in round, but approximately correct numbers, of $2,000. It will be noted that there is not one particle of evidence in the entire record to show that the goods were not worth fully their invoice price, $7,200; this court cannot know judicially that a particular stock of goods has depreciated from its invoice price.

2. Barnett was not an innocent purchaser because he had not, when this suit was begun against him, paid for his purchase. He had given his notes for amounts largely in excess of the aggregate of complainants' demands, and these notes, too, were, and are, within our anti-commercial statute (§ 3503, code of 1892), and are to be considered and governed by the terms of that statute. The notes were made in Mississippi, payable in Mississippi, are payable to the order of the respective payees, and in every way fall within said anti-commercial statute. If payment is essential to constitute a purchaser an innocent one, then, surely, under our laws the giving of notes which the maker can successfully defend against, does not constitute a buyer such a purchaser. The giving of such notes is not the equivalent of payment. The rule seems to be that, in order to constitute an innocent purchaser, payment must have been actually made or the purchaser must at least have assumed an irrevocable obligation to pay. 2 Pomeroy's Equity Jurisprudence, sec. 751. The notes given by Barnett to Simmons Bros., were not, and are not, irrevocable obligations. They were and are within our statute, and the same defense can be made to them in the hands of subsequent holders which could have been made to them if they were sued upon by Simmons Bros. Could these notes be successfully defended against if complainants succeed in this cause? If they had never been transferred by Simmons Bros., could they, in case complainants succeed, recover on the notes? They could not, most assuredly. It would be a perfect defense to Barnett, when sued on the notes by Simmons Bros., to show that there was a failure of consideration, or a partial failure of

consideration, in this, that the notes were given for goods sold by the payees to the maker, and that the payees at the time did not own the goods, or had sold them in fraud of creditors, and that the maker had to pay a stranger for the goods or return them to him. The notes given by Barnett in place, or in renewal, of the ones given by him to Simmons Bros., stand on the same plane. The only question in this case necessary to be decided is whether Barnett gave irrevocable obligations. We but confuse the case if we go into the matter of the good faith of Mrs. Dalton and of Allen, guardian, the assignees of the notes. Whether they were innocent purchasers of the notes within the meaning of the commercial law is aside from the case. The only question is, or can be, as to their rights as assignees under our statute. Their rights, as against Barnett, are governed and controlled by the statute, and, of course, the statute determines the character of Barnett's obligations as imposed by the notes. The following authorities bear us out in our position that the giving of notes under our anti-commercial statute does not, and cannot, constitute Barnett an innocent purchaser. Bear in mind, in reading these authorities, that the word "negotiable," as applied to commercial paper, means negotiable in the sense 'of the law merchant. *Barringer* v. *Nesbitt*, 1 Smed. & M., 22; *McMurran* v. *Soria*, 4 How. (Miss.), 154; *Parhan* v. *Randolph*, 4 How. (Miss.), 435; *Allen* v. *Commercial Bank*, 3 Smed. & M., 448; *Bank of Meridian* v. *Strauss*, 66 Miss., 479; *Tillman* v. *Hiller*, 22 Am. St. R., 77.

If Mrs. Dalton and Allen are preferred creditors, they are preferred by an instrument which gives character to their rights—that is to say, they are preferred by the assignment of the notes to them. Under the law, their rights under this assignment cannot rise superior to the rights of Simmons Brothers, and the whole fabric predicated of the idea of the preference of one creditor over another must fall to the ground because of the very terms of our statute.

It is said by counsel that we have no right to make defense for Mr. Barnett on his note. We do not attempt to do anything of that kind. We do not care whether Barnett makes defense to the notes or pays them. The question here is his character as a *bona fide* or *mala fide* purchaser. We have a right to inquire into any matter that throws light upon this question of his character, and that is all that we ask in this case.

*Blair & Anderson*, on the same side.

A *bona fide* purchaser is (1) one who purchases without notice of the bad intent of the seller, and (2) he must be a purchaser for value, and (3) have paid the purchase money before notice of the fraudulent purpose of the seller. Wait on Fraudulent Conveyances, sec. 369, p. 484; 8 Am. & Eng. Enc. L. (1 ed.), 756, and notes.

We will notice the third element, viz., he must have paid the purchase money before notice of the fraudulent purpose of the seller. We concede that it is not required of him that he shall have paid the actual cash, to be protected. If he is a purchaser without notice for value and has irrevocably bound himself to pay the purchase money, he will be protected. Barnett had not paid the purchase money at the time the bill in this case was filed. He lacked the amount of the note transferred to Allen, in the place of which another had been executed, and of the note transferred to Mrs. Dalton. The question is, had he irrevocably bound himself to pay these two notes? To sustain the negative of this proposition, we refer to the following: 2 Pomeroy's Equity, secs. 750, 751, and notes; *Tillman* v. *Hiller*, 22 Am. St. Rep., 77; *Bank* v. *Strauss*, 66 Miss., 479. We refer to these authorities in connection with our anti-commercial statute, code of 1892, § 3503. They are decisive of this case. To hold that Barnett had irrevocably bound himself to pay these notes to Allen and Mrs. Dalton at the time the bill was filed in this case—that is, at

time the fraud of the seller was brought to his notice—would overrule *Bank* v. *Strauss*, and other cases along the same line by our court, and nullify our anti-commercial statute. *Tillman* v. *Hiller, supra*, is a case almost on all-fours with the one in hand.

A bill is maintainable, under § 503, code of 1892, by creditors without judgment against a purchaser from a fraudulent debtor in a case where any one of the elements necessary to constitute a *bona fide* purchaser is absent. It is not necessary that all concur. In this case the third element is absent—that is, Barnett had not paid all the purchase money, and neither had he bound himself irrevocably to pay it. We are going on the idea now that the Allen and Dalton notes had been transferred to them in absolute payment and extinguishment of the guardianship debt, and the note of Simmons Bros. to Mrs. Dalton, which, however, we contend is not a fact, but, on the contrary, they were only held by them as collateral security.

Now, under § 503 of the code, the creditors of Simmons Bros. got a lien on the goods bought by Barnett from them, from the filing of their bill, to the amount of the purchase money unpaid, or which Barnett had not irrevocably bound himself to pay. So the case stands this way: The creditors of Simmons Bros. got a lien on the goods bought by Barnett to the amount of the unpaid purchase money, or which he had not irrevocably bound himself to pay, and, on the other hand, two of the creditors of Simmons Bros., viz., Allen and Mrs. Dalton, had, prior to the filing of the bill, accepted the notes of Barnett, payable to the order of Simmons Bros., for the unpaid purchase money, in satisfaction and extinguishment of their debts. The question is, which should have the preference. We concede that Barnett could not be made to pay his notes for the purchase money twice, under the facts of this case. The holders of the purchase money notes, by the transfer to them, acquired no lien on the unpaid purchase money, nor on the goods for which it was due. They only acquired,

by the transfer, the right to collect the unpaid purchase money,. provided no superior right intervened.   Was not the lien ac-- quired by the creditors of Simmons Bros., from the filing of their bill, a superior intervening right?   To hold that it was. not, it seems to us, would be a serious abridgment of § 503 of the code.

But these notes were not transferred to Allen and Mrs. Dalton in satisfaction and extinguishment of the debts of Simmons. Bros. to them.   A bare statement of the facts shows this. Allen was the guardian of Frank Simmons, and was the bondsman of A. F. Simmons, who had been the guardian while the ward's money was taken and used in the business of Simmons Bros.   Barnett's note for part of the purchase, payable to Simmons Bros., or order, was indorsed by them and handed to him, as the testimony abundantly shows, because he was the guardian and liable for the debt as bondsman for the former guardian.   There was no agreement as to whether it was transferred in payment of the debt or not.   In a short time (before this bill was filed) Barnett took up this note and gave his own, payable direct to Allen as guardian.   It must be remembered that under the law, Allen, as guardian, could accept nothing but money in pay and satisfaction of this debt. *Baughn* v. *Shackelford*, 48 Miss., 255; *State* v. *Greensdale*, 106 Ind., 364; *Jones* v. *Jones*, 20 Iowa, 388.

In the case of Mrs. Dalton she took the note of Barnett and surrendered her note on Simmons Bros., but this is all.   There is no evidence of any agreement that this was done in satisfaction and extinguishment of her debt on Simmons Bros.   In order for one note to extinguish another, it must be so intended, and this must be affirmatively shown.   *Wadlington* v. *Covert*, 61 Miss., 631; *Lear* v. *Freidlander*, 45 Miss., 559; *Clopton* v. *Matheny*, 48 Miss., 286; *Buckingham* v. *Walker*, 48 Miss., 610; *Purtee* v. *Bedford*, 51 Miss., 84; Tiedeman on Commercial Paper, sec. 379. The authorities are ample and full on this subject.   There

is no reason for misunderstanding them.   Even if it had been distinctly understood and agreed between Allen and Simmons Bros. and Barnett that the execution of his note by Barnett to Allen, as guardian, should be in satisfaction and extinguishment of the debt of Simmons Bros. to Allen's ward, still it would not be, for that agreement is condemned by law.   Allen had no power under the law to release Simmons Bros.

*B. A. P. Selman,* for appellees.

The notes given by Barnett were negotiable, though payable to order, and if transferred by Simmons Bros. to other creditors of the firm, either as security for their debts due them by the firm or in payment, it was valid, and Barnett would be protected by notice of such assignment before notice of appellant's demand or claim of fraud.   9 Am. St. R., 375; 29 Am. St. R., 509, 540; 42 Am. St. R., 934; 44 Am. St. R., 652.

Appellees contend that the right granted to the maker of a note payable to order, to defend against the same on account of any defenses arising to him which existed before notice of assignment, is a defense and right accruing alone to the maker of the note, and that, therefore, Barnett would have this right against the notes, but it could not be invoked by appellants. Whatever right appellants may have had to rescind the sale and reclaim the goods existed only when the goods were in the hands of Simmons Bros., and when third parties' rights intervened, the right to reclaim was defeated.   The right to reclaim exists only while the goods are in the hands of the first party, or volunteers holding under first party, coupled with the ability to point out and seize the identical goods.

Barnett is not a volunteer in any sense.   The proof shows he had no knowledge of any fraud on the part of Simmons Bros., if they were guilty of any; that he paid full value, and his action in the matter was prompted by a desire to save him-

self. We think the proof abundantly meets the requirements of *Richards* v. *Vaccaro*, 67 Miss., 518, requiring proof of the grantee of good faith and valuable consideration, without notice on the part of Barnett.

*Brame & Alexander*, on the same side.

Let us for a moment consider the attitude of Allen and Mrs. Dalton in this case. They each had a valid debt for money loaned Simmons Bros., and which had gone directly into their mercantile business. This indebtedness was of itself of sufficient consideration to sustain a sale to them by Simmons. Bros., or a preference of their debts, and because of this fact, any act done by them in the transaction, such as releasing debtors, extending time or discharging a security, would make them *bona fide* purchasers and entitled to prevail over any third person asserting an equity. Remember that we are not considering the case of one not a creditor, who is buying from a fraudulent vendor and paying him money for the property. In case of one buying and paying money, or any other thing, of course, we recognize the rule that if notice of the superior rights of a third person is given before full payment, the purchaser is not justified in going ahead and completing the transaction by making full payment to the party not entitled to it. In that case the transaction, being incomplete at the time of notice or suit, the purchaser would not be protected in consummating it. But here the case is quite different. Allen and Mrs. Dalton are not purchasing for speculation, or the like, to pay in money. They are creditors having valid debts, and this indebtedness itself is an ample consideration when in connection with it there is the element of releasing the debtor, extending the time of payment or the like. "The *bona fide* purchaser is protected if there is any other consideration besides previous indebtedness, as where notes are delivered up or additional property given in exchange." 8 Am. & Eng. Enc. L., 143.

The authorities relied upon by the appellants to the effect that one is not a *bona fide* purchaser who makes payment of the price after notice, we fully recognize, but they have no application where a purchase is made, not for money or other things to be paid, but in consideration of a valid, sub-sisting debt. Where the transaction is not complete and the purchase money has not been paid, it is, of course, proper that notice of the superior equity should intercept the payment of the price. But here the transaction was not imperfect or incomplete when the complainants filed their bill. As to Sim-mons Bros., the transaction had been fully and finally com-pleted, so far as Allen and Mrs. Dalton were concerned. They had released and discharged irrevocably their debtors, Sim-mons Bros., and had taken a note of a third person, payable in the future. "A sale of a stock of goods for which the purchasers agree to pay off certain creditors of the vendor in full, certain others in part, and the balance as the seller may direct, is, in the absence of fraud, valid." 8 Am. & Eng. Enc. L., 856, note 1, citing *Green* v. *Marshall*, 39 N. W. Rep., 767.

The correctness of this statement cannot be questioned. If I am indebted to a number of persons, who is there to prevent my selling and delivering my personal property to any one who will assume legally the payment of some of my debts? I could sell the property and pay them the cash for it, obtaining a release in that way. What is to prevent my accomplishing the same purpose by having the purchaser to assume, as a part of the consideration, the payment of their debts and securing a release by that means? And when this is done, what applica-tion has our anti-commercial statute to the transaction? That statute relates solely to defenses between the parties to notes or bills, and has no more application to a case of this kind than the laws in relation to burglary. The only way in which it can be possible to bring in the anti-commercial statute is first

to ignore entirely or deny the rights of Mrs. Dalton and Allen, guardian, and this is of course to assume the whole case.

We again call the attention of the court to the fact that the effort of counsel is now to have the court pronounce against Allen and Mrs. Dalton, without even having them before the court, and this too without any allegation in the bill, or any prayer upon which the relief now insisted upon can properly be granted.

It is conceded by appellant in argument that, if the obligation of Barnett became irrevocable before the bill was filed, the bill is not maintainable as one for rescission—that he is a *bona fide* purchaser. If this be true, which we do not concede, we submit that the obligation had become irrevocable before suit. The transaction by which Simmons Bros. took Barnett's note, and assigned it to Simmons, as guardian, and the latter assigned it to Allen, guardian, who surrendered it and took a new note to himself, constituted a complete novation of the debt. The same is true as to the Dalton note. This being true, all questions of equities between the original parties are eliminated. *Adams* v. *Power*, 48 Miss., 450.

Argued orally by *W. D. Anderson, R. H. Thompson,* and *T. A. McWillie,* for appellants, and by *L. Brame,* and *C. H. Alexander,* for appellees.

TERRAL, J., delivered the opinion of the court.

A. F. and B. L. Simmons, engaged as partners in the mercantile business at Booneville, and owning a stock of goods, wares, and merchandise of about $7,000 in value, and being largely indebted beyond their ability to pay, and being pressed by S. M. Barnett for a debt due him, as well as on one for which he was their security at the Tupelo National Bank, on October 15, 1895, sold their said stock of goods to S. M. Barnett at seventy-one cents on the dollar of the cost price. In settlement of the purchase price of the said stock of mer-

chandise, Barnett paid Simmons Bros. $840 cash, gave them
an acquittance of a debt of $758.22 due to him, agreed to pay,
and did pay before the bill was filed in this cause for Simmons
Bros., to their creditors debts amounting to about $1,402.99,
and for the remainder of the purchase price of said stock of
goods Barnett executed to Simmons Bros. his two notes pay-
able to them, one for $1,668.15, and one for $535; that said
note for $535 was by Simmons Bros. delivered to Mrs. E. T.
Dalton, in exchange of the note of said Simmons Bros. to Mrs.
Dalton for a like amount of borrowed money; that the note
for $1,668.15 represented a sum of money due Frank Sim-
mons, a ward of said A. F. Simmons, which had been placed
in the business of A. F. and B. L. Simmons (Simmons Bros.),
with the understanding that it should constitute a joint or firm
debt; that this $1,668.15 note was, on October 15, 1895,
delivered by A. F. Simmons to S. P. Allen, his surety on his
guardian bond of Frank Simmons; that Allen on the same day
took out letters of guardianship of said Frank Simmons, the
said A. F. Simmons resigning said office for that purpose, and
said Allen immediately, and before the bill was filed in this
case, took from Barnett a note for $1,668.15, payable to him-
self as guardian, in extinguishment of the note transferred to
him by Simmons Bros.   The $535 note, executed by Barnett
to Simmons Bros., was by them, before the suit was brought
in this case, transferred to Mrs. Dalton in place of their note
to her, the consideration of which was borrowed money, of
which Barnett had notice.

On the 28th day of October, 1895, Pollock & Bernheimer,
creditors of said Simmons Bros. in the sum of $611.06, filed
their bill in the chancery court against said A. F. and B. L.
Simmons and said S. M. Barnett, to set aside a sale of the
goods of said Pollock & Bernheimer to said Simmons Bros., on
account of the sale thereof being made through false represen-
tations of the solvency of said Simmons Bros. to said Pollock
& Bernheimer, and, also, to set aside the sale of the stock of

goods, wares, and merchandise by Simmons Bros. to said S. M. Barnett, because it was alleged to have been made with intent to hinder, delay, and defraud said complainants in the collection of their debt, and asking that said stock of goods be subjected to their said claim.   Subsequently the Swan-Abraham Hat Co., B. Lowenstein & Co., and other creditors of said Simmons Bros., in various considerable amounts, filed their petitions, uniting with Pollock & Bernheimer in their suit against said Simmons Bros. and against said S. M. Barnett, basing their several and respective causes of action upon the same grounds.

The facts, in part, are as hereinbefore recited, and it is maintained that the sale of the stock of goods by Simmons Bros. to Barnett is void as to their creditors, because the execution of the note of $1,668.15 by Barnett to Allen, and the holding of the $535 note by Mrs. Dalton, do not, at least to the sum of said notes, constitute Barnett a *bona fide* purchaser for the value of said stock of goods.   In other words, it is said that Barnett, in consequence of our anti-commercial statute, could defeat a recovery upon said notes if sued by Allen and Dalton thereon.

Allen and Dalton were creditors of Simmons Bros., and if Barnett had paid them in money there could be no cause of complaint at the transaction.   That he gave his notes for the amounts does not affect the result.   Allen and Dalton took the notes of Barnett, before they became due, in discharge of debts due them from Simmons Bros., and thereby received them discharged of all equities between Barnett and Simmons Bros. of which they had no knowledge.   On the facts as they appear in the record, it cannot be that Barnett, if sued by Allen and Dalton, could plead any failure of consideration or other defense to the notes held by them.   These notes were given to them in extinguishment of the notes of Simmons Bros., and they are *bona fide* holders for value.   *Emanuel* v. *White*, 34 Miss., 56; 1 Dan. on Neg. Inst., sec. 832; *Ethridge* v. *Gallagher*, 55 Miss., 458.   Mrs. Dalton and Allen severally had an

equal equity with other creditors, and have, also, a legal right. They should not be deprived of their advantage.

There were other matters in the case which it was contended vitiated the assignment to Barnett, but the evidence in regard to them was so uncertain that it made no sufficient impression upon the mind of the chancellor, and we cannot say that he erred in his conclusion.

*The decree of the court below is affirmed.*