WILLIAM H. McCLURE et al., Appellants, v. JAMES T. LITTLE et al., Respondents; THE DESERET SAVINGS BANK, Intervener.

Promissory Notes—Material Alterations—Reformation—Mistake—Attorney's Fee.

1. Plaintiff brought this action to restrain defendants from foreclosing a trust deed given as security for notes. It appears that Smith, acting for himself and for the bank, the intervener in the case, filled up a blank in the notes by writing after the words "interest payable" the word "semiannually," to make the notes conform to the understanding and contract of the parties when executed. *Held*, that the alteration is a material one, but as it was innocently made for the purpose of correcting a mistake and making the instrument conform to the agreement of the parties, without any fraudulent intent, and it appears that no one was injured by filling in the blank left for that purpose, the instrument is not annulled, nor the debt extinguished.

2. Here the intervener sought to have the notes reformed in accordance with the understanding and agreement of the parties, and

the court of equity has the power so to decree, and restore the instrument according to the original intention of the parties.

3. Where the deed of trust provided for the payment of a reasonable attorney's fee, and there is no proof showing what the attorney charged, or what it was agreed should be paid him, and the findings show that no attorney's fee was allowed in the original proceedings, and yet these proceedings were included as the basis for the value of services allowed in the case in intervention, *held*, under chapter 39, p. 25, Sess. Laws 1894, which provides that no greater amount should be allowed or decreed as attorney's fees than the sum which appears by the evidence is actually charged by and paid to the attorney, and only the amount to be retained by the attorney shall be decreed, that the attorney's fee should not be allowed. *Held*, further, that this statute was enacted in order to prevent a division of fees provided for in the mortgage between the attorney and the mortgagee; that only those reasonable fees paid or agreed to be paid for attorney fees could be taxed against the defendant under the contract in the trust deed.

(No. 787.   Decided June 14, 1897.)

Appeal from the Third district court, Salt Lake county. M. L. Ritchie, *Judge.*

Action by William H. McClure and others against James T. Little and Elias A. Smith. The Deseret Savings Bank intervened. From the judgment, plaintiffs appeal. *Affirmed.*

*C. F. & F. C. Loofbourow,* for appellants.

If the alterations were fraudulently made, not only the notes, but the original debt for which they were given, are destroyed or wiped out. If innocently made, while the notes are hereby destroyed, resort may nevertheless be had, according to the prevailing opinions in this country, to an action upon the original indebtedness, if any existed. *Draper* v. *Wood,* 112 Mass. 315; *Meyer* v. *Huncke,* 55 N. Y. 417; *Bloat* v. *Brown,* 13 Ohio St. 364; *Wallace* v.

*Jewell,* 21 Ohio St. 163; *Harsh* v. *Keppler,* 28 Ohio St. 200; *Wood* v. *Steele,* 6 Wall. 80; *Mersman* v. *Werges,* 112 U. S. 139; 2 Parsons on Notes and Bills, pp. 571-2, 580-1, 1st Ed; 3 Randolph, Commercial Paper, sec. 1742.

But the destruction of the notes by alteration destroys the mortgage as well, even though no alteration had been made in it, because all the instruments are parts of one completed contract. *Warring* v. *Smythe,* 2 Barb. Ch. 119; *Meyer* v. *Huncke,* 55 N. Y. 412; *Sherman* v. *Sherman,* 3 Ind. 337; *Tate* v. *Fletcher,* 77 Ind. 105.

*Moyle, Zane & Costigan,* for respondent.

The courts hold that the mortgage may be enforced when the note secured by it has been altered without fraudulent intent. *Vog'e* v. *Ripper,* 34 Ill. 100; *Clough* v. *Seay,* 49 Iowa 111; *Elliot* v. *Blair,* 47 Ill. 342; *Gillette* v. *Smith,* 18 Hun 10; *Cheek* v. *Nall,* 112 N. Car. 370; *Heath* v. *Blake,* 28 S. Car. 406.

The alteration of a note by a stranger does not affect the contract, but merely mutilates the evidence of it and is pure spoliation; and even if the person making the alteration is the agent of one of the parties, unless he had express or implied authority for the act, he will be regarded as a stranger, the alteration not being imputable to the principal. *Nickerson* v. *Swett,* 135 Mass. 514; *Collins* v. *Makepiece,* 13 Ind. 448; *Davis* v. *Carlisle,* 6 Ala. 707; *Reese* v. *Overbough,* 6 Cow. 746; *Cerry* v. *Haxlewood* (Ky.) 1 Duv. 109; *Piersol* v. *Grimes,* 30 Ind. 129; *Nichols* v. *Johnson,* 10 Conn. 192.

This rule is especially true where only a blank is filled, as in this case. The words "interest payable" were followed by a blank and that blank alone was filled. *Hunt* v. *Adams,* 6 Mass. 519; *Angle* v. *N. W. Ins. Co.,* 92 U. S. 330; *Weyhauser et al.* v. *Dun et al.,* 100 N. Y. 155;

*McGrath* v. *Clark,* 56 N. Y. 34; *Redlich et al.* v. *Doll,* 54 N. Y. 234; *Weaner* v. *Bromley,* 31 N. W. 839; 3 Randolph on Com. paper secs. 1765, note 8 and sec. 1768. 2 Parsons on Contracts, 719-720; Chitty on Contracts, 786; Chitty on Bills, 184 and 185, star paging; 2 Daniel Negotiable Instruments, p. 207, secs. 1403-4; 2 Exception to article .248, p. 252 of Benjamin Chalner's digest Bills and Notes.

Also on the principle of estoppel the bank here has the right to claim against McClure. *Putnam* v. *Sullivan,* 4 Mass. 45; *Bank* v. *Kimball,* 10 Cush. 373; *Violette* v. *Patton,* 10 Cranch 142; *Bank of Pittsburg* v. *Neal,* 22 How. 96; *Charlton* v. *Reed,* 61 Iowa 166; *Cronkhite* v. *Nebeker,* 81 Ind. .319; *Wessell* v. *Glenn,* 108 Pa. St. 104.

MINER, J.:

Prior to 1890, defendant Smith and others owned Central Park, in Salt Lake, and sold it to one Andrews. In part payment, Smith took two notes for $20,000 each secured by mortgage on the property. Plaintiff McClure bought the property subject to the mortgage. Negotiations afterwards took place between Smith and McClure by which McClure agreed to give his notes, secured by trust deed on the property, to Smith, and take up the incumbrance. The notes and trust deed were drawn up and delivered to McClure for him to take to Colorado for his wife's signature. They were afterwards signed and returned to Smith by mail. The notes and trust deed were drawn upon printed blanks. The notes were all in the following form, except as to date of payment and amount: "$16,250.00 gold. Salt Lake City, Utah, October 1, 1891. One year after date, for value received, we, or either of us, promise to pay to the order of Elias A. Smith sixteen thousand two hundred fifty dollars, negotiable and payable at the Deseret National Bank of Salt Lake City,

in U. S. gold coin, with interest at the rate of nine per cent. per annum from date until paid.    Interest payable ————. [ Signed ] William H. McClure.    Amanda M. McClure." When the notes were delivered to Smith, the word " semiannually " was left out of the blank following the words " interest payable." When Smith received the notes, October 21, 1891, he showed them to Mr. Young, who discovered that the word " semiannually " was left out of the blank, and suggested the error. Smith remarked that it was a clerical error, and immediately wrote the word " semiannually " in each note, so that they would read, " Interest payable semiannually." Plaintiffs claim the word " semiannually " was not in the trust deed when delivered to Smith, but the testimony is conflicting on this point. The notes and trust deed were made payable to Smith, with James T. Little as trustee, and contained the usual power. Smith was the indorser on the Andrews note. Smith and McClure were indorsing the new notes. Both were procuring the new loan for themselves as well as for the bank. While Smith was acting for the bank he had no authority from the bank officials to alter the notes. In July, 1893, proceedings were begun to foreclose this trust deed, by publication, on account of the non-payment of the semiannual interest falling due April 1, 1893. Thereupon plaintiffs brought this suit against Smith and Little, the trustee, to restrain the sale, and have the securities canceled and adjudged void on account of the alleged material and fraudulent alteration. Little and Smith answered, and admitted the alteration of the notes so as to conform to the agreement of the parties, by filling in the blank left, and that it was an immaterial alteration, done innocently with the plaintiffs' consent, and that the plaintiffs ratified the same. They denied any alteration in the deed. The Deseret Savings

Bank then filed its complaint in intervention, alleging that it became the owner of the notes after their execution, that at the time the notes were executed the makers agreed to pay interest at 9 per cent. per annum, payable semiannually, until paid, and set out therein the consideration therefor, but that by a clerical omission of the party making out said notes the word "semiannually" was by mutual mistake and oversight left out of said notes from the blank left for that purpose; that other parties indorsed the notes as indorsers; that Smith was the cashier of the intervener. Alleged that the notes had become due. Claimed $1,000 attorney's fees. Asked for a foreclosure of the trust deed; that the notes be reformed so as to include the words "semiannually" in the blank left for that purpose in them, following the words "Interest payable"; for judgment, deficiency judgment, and for further relief. It appears from the proof that there was full value moving to the plaintiffs as a consideration for these notes. It clearly appears from the testimony that it was agreed between the parties at the time these notes and trust deed were drawn that they should draw interest at 9 per cent. per annum, payable semiannually, from date until paid, but by a clerical error of the draftsman, the word "semiannually" was left out of the printed blank in the notes; that the notes were signed and returned to the payee, the mistake not being discovered until after they were signed and delivered by mail; when Smith saw the mistake, he said it was a mistake, and immediately filled the blank so as to have it conform to the agreement of the parties, supposing he had a right to do so. The change, however, was made without the consent of the makers, except that there was some slight testimony offered tending to show that plaintiffs afterwards ratified the change by making payments of interest,

and offering to make part payment on one note. The testimony on all these questions was conflicting, but we are of the opinion that the contention on the part of the intervener is sustained by a strong preponderance of the testimony. The alteration was made innocently, for the purpose of making the instrument conform to the understanding and agreement of the parties. It was not made fraudulently, for the purpose of injuring any one. It does not sufficiently appear that the trust deed was altered in the respect mentioned. The alteration of the notes was a material alteration, but, as it was made under the circumstances mentioned, we are of the opinion that the prayer for reformation should be granted. A fraudulent alteration not only avoids the instrument itself, but also extinguishes the debt which constitutes the consideration for the instrument. But when the alteration was innocently made for the purpose of making the instrument conform to the agreement of the parties, without any fraudulent intent, and it appears that no one was injured by the filling of the blank left for that purpose, then the instrument is not annulled, nor the debt extinguished. We do not want it understood, however, that we approve of this method of tampering with written instruments for any purpose. This correction could more properly have been made by a court of equity. The alteration made was clearly improper, and should not have been made by Mr. Smith. In this case the intervener sought to have the notes reformed in accordance with the understanding and agreement of the parties, and the word " semiannually " inserted in the notes after the words " Interest payable," and the court so decreed. A court of · equity has the power to so decree, and thereby restore the instrument to its original condition. We are of the opinion that under the statute the intervener was entitled

to institute the proceedings in intervention, and that the court was correct in decreeing the relief asked, in reforming the notes so as to conform to the express agreement of the parties, and to grant a decree of foreclosure.

In this case the debtor seeks to avoid an honest debt because of the alteration, without offering to pay the same. It is a cardinal principle that equity will not aid a party in doing that which is not equitable. He who seeks equity must be prepared to do equity. A court of equity will hardly permit a debtor to get rid of a debt which he honestly owes, and which is based upon a valid consideration, because his creditor has innocently inserted a word in the contract that he had agreed should be inserted, even if the alteration was such as a court of law would not excuse. *Taylor* v. *Adair*, 22 Iowa, 279; section 3190 Comp. Laws Utah 1888; *Nickerson* v. *Sweet*, 135 Mass. 517; Tied. Com. Paper, §§ 392-395; *McRaven* v. *Crisler*, 53 Miss. 542; *Boyd* v. *Brotherson*, 10 Wend. 93; 2 Daniel Neg. Inst. §§ 1403, 1404; Rand. Com. Paper, § 1765; *Ball* v. *Storie*, 1 Sim. & S. 210; *Goodenow* v. *Curtis*, 33 Mich. 505; *Bank* v. *Carson*, 60 Mich. 432; *Ames* v. *Colburn*, 71 Am. Dec. 723; *Duker* v. *Franz*, 3 Am. Rep. 317; *Ryan* v. *Bank*, 148 Ill. 349; *Kountz* v. *Kennedy*, 63 Pa. St. 187; *Seymour* v. *Mickey*, 15 Ohio St. 515; 2 Pars. Notes & B., p. 572.

Objection is made to the allowance of $1,000 attorney's fee. The note in suit did not provide for an attorney's fee. The trust deed provides that the trustee may pay out of the proceeds of sale the expenses of this trust, including a reasonable attorney and counsel fee, and compensation to said trustee, or his successor in trust, for his services. The proceeding to foreclose the trust deed by advertisement was enjoined, and the deed was foreclosed through these proceedings in intervention in equity. A witness was asked what a reasonable attorney's fee would

be in the case of McClure against Little and Smith, with the bank as intervener; such services being for the filing of an answer to plaintiffs' injunction in behalf of Little and Smith, and hearing had on the motion to dissolve the injunction, lasting several days, and afterwards a complaint in intervention by the bank, asking reformation of the notes to the original understanding, and foreclosure; involving about $45,000, the hearing lasting several days; the question being what a reasonable attorney's or solicitor's fee would be in both matters. The witness answered, "$1,000." No other testimony was offered. No evidence was offered on the subject of what was charged by or retained by the attorney. The objection to the question is that it comprehended more than could be covered by attorney's fees. It included a fee for the defense to the main injunction case, where no attorney's fee could be claimed, and attorney's fee as trustee, who had claimed no fees; also attorney's fee for reformation of the notes in the intervention proceedings by the bank, and is not a proper basis for computation, and no attorney's fee should be charged. The question comprehended more than could be legitimately included in the foreclosure of the mortgage by the trustee. The findings show that no attorney's fee was allowed in the original proceeding, yet that proceeding was included as a basis for the value of the services. The amount allowed was in excess of what should have been allowed for attorney's fees in the case of intervention. Under the proof, much of the expense created is the result of mistakes and errors of the intervener or trustee. Had the original proceedings been brought to reform and foreclose the notes and mortgage, only one proceeding would have been necessary, with a consequent reduction of expense. There is another reason why attorney's fees should not be allowed.

Chapter 39, p. 25, Sess. Laws 1894, provides that, when an attorney's or counsel fee is claimed by the plaintiff, no greater amount should be allowed or decreed than the sum which appears by the evidence to be actually charged by and paid to the attorney for the plaintiff, and that only the amount to be retained by the attorney shall be decreed. This statute was enacted to prevent a division of the fees provided for in the mortgage between the attorney and the mortgagee, and to allow only such reasonable attorney's fees to be taxed against the defendant as were actually agreed to be paid, or were paid, for his services. There was no proof showing what the attorney for plaintiffs actually charged, or what the agreement was he should receive from the plaintiffs. Consequently no fees should have been allowed in the decree. No other construction can be placed upon the statute. Attorney's fees, when allowed, go to the mortgagee or trustee, and become a part of the judgment. The bank is responsible to the attorney for his fees, and will doubtless pay a sum equal to the amount it has asserted was a reasonable fee. We find no other error in the proceedings. The district court is instructed to modify the findings and decree, striking out the $1,000 attorney's fee. With this modification, the judgment and decree of the district court is affirmed, with costs.

ZANE, C. J., concurs.