## IDAHO STATE BANK OF TWIN FALLS, IDAHO, v. HOOPER SUGAR CO. et al.

No. 4039.    Decided January 3, 1929.    (276 P. 659.)
Rehearing Denied April 13, 1929.

26

*Henderson & Johnson,* of Ogden, for appellant.

*DeVine, Howell, Stine & Gwilliam,* of Ogden, for respondent.

HANSEN, J.

Plaintiff brought this action to recover on a promissory note executed by defendant Hopper Sugar Company and indorsed in blank by defendant Parley T. Wright. The note is in words and figures as follows:

"Ogden, Utah, September 5, 1919                    $30,000.00 Gold.
On ——— Six Months ——— 191—, after date; for value received, the undersigned promise to pay to Parley T. Wright, or order, at the Pingree National Bank, of Ogden, Utah, Thirty Thousand and 00/100 ——— Dollars in U. S. Gold Coin, with interest payable at the rate of seven per cent per annum from date until paid, both before and after judgment, together with reasonable dollars attorney's fee, if this note is collected by an attorney, either with or without suit. If the interest is not paid when due the holder may proceed to collect both principal and interest. The makers and endorsers of this note each expressly waive demand, notice of nonpayment and protest, and suit against the maker; and also agree that this note may be extended in whole or in part without their consent.
    "By order of the Board of Directors,
                                "Hooper Sugar Company,
                                "By Job Pingree, Pres.,
                                "By J. H. Riley, Sec."

Default judgment was rendered in favor of plaintiff against the Hooper Sugar Company. Defendant Wright answered. In his answer he alleges, and the trial court found, substantially the following facts:

Plaintiff is, and at all times mentioned in the complaint was, a banking corporation of the state of Idaho. Defendant Hooper Sugar Company is, and at all times mentioned in the complaint was, a corporation of the state of Utah. Defendant Parley T. Wright is, and at all times mentioned in the complaint was, a director of the Hooper Sugar Company. On December 6, 1919, Parley T. Wright executed and delivered

to the National City Bank of Salt Lake City, Utah, his promissory note for the principal sum of $30,000. The note was secured by 375 shares of the capital stock of the Hooper Sugar Company, and provided for the payment of interest at the rate of 6 per cent per annum. It was made payable at the Pingree National Bank of Ogden, Utah. The National City Bank paid $30,000 to the Hooper Sugar Company. On or about June 21, 1920, the Hooper Sugar Company executed and delivered to Parley T. Wright the note sued upon in this action. This note was executed and delivered to Wright to secure him against his liability on the $30,000 note which he had executed and delivered to the National City Bank under date of December 6, 1919. The note executed and delivered to Wright by the Hooper Sugar Company was dated September 5, 1919, with the intention that it should correspond with the date of the note that Wright executed and delivered to the National City Bank under date of December 6, 1919. The dates of the two notes are not the same, because the scrivener who made out the note of the Hooper Sugar Company to Wright misapprehended the date of the note of Wright to the National City Bank.

On September 2, 1920, Wright wrote his name on the back of the note executed by the Hooper Sugar Company to him as payee. He then delivered the note to J. H. Riley, cashier of the Pingree National Bank, with directions that the note be sent to the National City Bank at Salt Lake City. At the same time Wright executed a note payable to the National City Bank to renew the note which the National City Bank held against him for the sum of $30,000, dated December 6, 1919. The renewal note so executed by Wright was in words and figures as follows:

"Ogden, Utah, ————, 191—,                 $30,000.00 Gold.
"On ————, 191—, after date, for value received the undersigned promise to pay to the order of the The National City Bank of Salt Lake City, at the Pingree National Bank, of Ogden, Utah, Thirty Thousand and No/100 Dollars in U. S. Gold Coin, with interest payable quarterly at the rate of seven per cent per annum from date until paid, having deposited as collateral security for the payment

of this note, and of any and all claims, demands, or other indebtedness due or not due by ———— to said bank at the maturity of this note.

"Certificate No. ———— for 375 shares Hooper Sugar Company stock with authority to sell the same, or so much thereof as may be necessary, at public or private sale, at the option of said bank, on the failure to pay either principal or interest on any of said claims when due, and without notice, and with the right of said bank or the holder of this note to become purchaser at the sale. If this note is placed in the hands of an attorney for collection, I agree to pay ten per cent additional as an attorney's fee. If interest is not paid at the time the same becomes due, the holder may declare both principal and interest due. Demand notice and protest waived and time of payment may be extended without my consent.

"Should the security depreciate in value, I agree to furnish additional security to cover any such depreciation when called upon by the bank.

"No. 7079  Due Nov. 6, 1920.

"Parley T. Wright."

This note and the note indorsed by Wright were then transmitted by mail to the National City Bank. Accompanying the notes was the following letter:

"The Pingree National Bank,
"United States Depository,
Ogden, Utah, September 2, 1920.

"Mr. Frank Pingree, Cashier, Salt Lake City, Utah—Dear Sir: Mr. P. T. Wright called in this morning and said that he talked to you over the telephone and you requested him to send a renewal note for $30,000.00, and we have had him fill one out as near as we can. You are authorized to fill in the date and time to run.

"His note received from the Hooper Sugar Company is also enclosed to be filed with the Trustee. I am also enclosing my note for $15,000.00 and ask that you file it at the same time and get proper receipt.

"If Mr. Wright has not already paid for the Revenue Stamps, send us a memorandum and we will collect from him.

"Yours truly,      J. H. Riley, Cashier."

At the time the notes were sent to the National City Bank, negotiations were being had whereby the Hooper Sugar Company was to be sold to the Interstate Sugar Company.

It was planned that the proceeds realized from the sale should be used to pay the creditors of the Hooper Sugar Company. The deal was to have been consummated through the Bankers' Trust Company of Salt Lake City. The trustee mentioned in the communication of J. H. Riley accompanying the two notes was the Bankers' Trust Company. It was for the purpose of filing his claim against the Hooper Sugar Company with the Bankers' Trust Company that Wright indorsed the Hooper Sugar Company note and caused the same to be forwarded to the cashier of the National City Bank. Wright, by letter dated August 10, 1920, and by his testimony at the trial, stated that the National City Bank had agreed to accept the claim of Wright against the Hooper Sugar Company on account of its $30,000 note held by Wright in full settlement of the note which the National City Bank held against him.

On September 3, 1920, Frank Pingree, cashier of the National City Bank, acknowledged receipt of the two notes by mailing the following letter to J. H. Riley:

"I acknowledge receipt of your letter of the 2nd, enclosing Parley T. Wright's note for $30,000.00, payable to our order, and the Hooper Sugar Company notes of $15,000.00 and $30,000.00 payable to your order and P. T. Wright's order respectively.

"You suggest that the last two notes be filed with the Trustee for the stock owned by the Hooper Sugar Company, but I think there would be no particular advantage in filing these notes until the Trustee has specifically instructions as to the disposition of the stock held in trust. I am therefore holding pending instructions being forwarded to the Trustee."

On September 3, 1920, the cashier of the National City Bank caused Wright's renewal note to be altered in the following particulars: The note was dated June 6, 1920, and was made payable November 6, 1920, as authorized by the letter accompanying the note. The interest rate of the note was changed from 6 to 7 per cent per annum. The words, "The National City Bank of Salt Lake City at," were erased, and in lieu thereof the words, "The Stock-

growers Bank & Trust Co., Pocatello, Idaho," were written in the note. The words, "Hooper Sugar Company note for $30,000.00," were inserted in the note immediately below the words, "Hooper Sugar Company stock." Frank Pingree, the cashier of the National City Bank, testified that Wright in a telephone conversation authorized the making of all of the alterations made on the renewal note. Wright denied that he had given Pingree any authority to alter the renewal note except the authority granted in the letter which accompanied the note.

The trial court found that the alterations of the renewal note by changing the rate of interest, the name of the payee, and adding the words, "Hooper Sugar Company note for $30,000.00," were made without authority from ■ Wright. The evidence is sufficient to support the trial court's finding in such respect.

After Wright's renewal note had been thus altered, it and the note indorsed in blank by Wright were transmitted to the Stockgrowers' Bank & Trust Company at Pocatello, Idaho, with the following letter from the National City Bank:

"I enclose herewith Parley Wright Note for $30,000.00 secured with 375 shares of Hooper Sugar Company Stock, and with $30,000.00 note signed by the Hooper Sugar Company and payable to the order of Mr. Wright.

"This note is an excess for us, or rather has been ruled to be an excess by the department, and they have requested us to take it out of the bank.

"There is every likelihood that the affairs of the Hooper Sugar Company will be adjusted within the next ten days or two weeks, and in order to have the excess note out of the bank, we ask that you kindly credit our account with the same, and forward to us some of your discounts in like amount to offset this credit so that you will not be advancing funds to us. The rate of interest paid on the note will be sent to you at the same rate that the notes are drawing that you forward to us. We realize that you are securing better than 7% on most of your loans in your section, and this letter will serve as your assurance to you that this note will be taken off your hands satisfactorily."

On September 7, 1920, the Stockgrowers' Bank & Trust Company of Pocatello, Idaho, acknowledged receipt of the notes so transmitted to it by the National City Bank by the following letter:

"This will acknowledge receipt of your of the 3d enclosing therewith note of Parley Wright, $30,000.00, secured by 375 shares of Hooper Sugar Company Stock, and note of the Hooper Sugar Company for $30,000.00.

"We are handing you herewith of receivables:

Bannock Hotel Company ............................. $10,000.00
W. H. Hillman ....................................... 9,111.72
David Brookie ....................................... 5,220.80
David Brookie ....................................... 5,591.65

"We are charging your own account with $6.00 for revenue stamps on Parley Wright note.

Total ........................................:.... $29,924.17

which leaves a difference of $75.83, which amount we are crediting to your account today.

"With regard to the interest—part of our interest is already paid, and we would suggest that you collect the interest on the Wright note, and we will collect the interest on the notes we enclose herewith. We understand that your bank is responsible for the Parley Wright note, and under this condition we will be responsible for the other notes although we have endorsed the Bannock Hotel note without recourse, and the other notes are myself notes and endorsed. We believe there should be some moral guarantee from each of us to the other in these matters."

On October 11, 1920, the Stockgrowers' Bank & Trust Company transmitted and transferred to the plaintiff in this action the note sued upon herein and also the altered renewal note of the defendant Wright. The following letter from the Stockgrowers' Bank & Trust Company of Pocatello, Idaho, to the plaintiff accompanied the notes.

"We are enclosing herewith note of Parley T. Wright, $30,000.00, to which is attached as collateral stock Certificate No. 152, for 375 shares of the Hooper Sugar Company. This note is to be held by you as collateral in connection with U. S. Bonds borrowed in the amount of $20,000.00."

Neither Wright's note made out in favor of the National City Bank nor the Hooper Sugar Company's note in favor of Wright has been paid. It does not appear that the United States bonds in the sum of $20,000 borrowed by the Stockgrowers' Bank & Trust Company from plaintiff in this action have ever been returned. It is obvious upon the face of the Wright renewal note that the name of the payee and the rate of interest have been altered.

Upon substantially these facts the trial court made its conclusions of law and rendered judgment in favor of Wright and against plaintiff, Idaho State Bank, dismissing plaintiff's action. Plaintiff prosecutes this appeal from the judgment so rendered.

Plaintiff contends that, under the facts shown by the evidence and found by the trial court, plaintiff is a holder in due course of both the note executed and delivered by Wright to the National City Bank and the note executed and delivered by the Hooper Sugar Company to Wright and by him indorsed in blank and transmitted to the National City Bank; that any defenses Wright may have to the payment of the notes in the hands of the National City Bank were cut off when the notes were transferred to plaintiff. On the other hand, Wright contends that plaintiff is not a holder in due course of either the note indorsed by him or the note executed by him; that he has the same defenses to an action founded upon either or both of the notes in the hands of plaintiff as he would have had if the National City Bank had brought an action for its own use and benefit.

The Negotiable Instruments Law, Comp. Laws Utah 1917, § 4086, thus defines a holder in due course:

"A holder in due course is a holder who has taken the instrument under the following conditions: 1. That the instrument is complete and regular upon its face; 2. that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; 3. that he took it in good faith and for value; 4. that at the time it was negotiated to him he had no

notice of any infirmity in the instrument or defect in the title of the person negotiating it."

We are clearly of the opinion that, under the facts shown by the evidence and found by the trial court, plaintiff is not a due course holder of the altered note. When a mere inspection of an instrument shows that it has been altered, a purchaser is not a holder in due course because such a note is not regular on its face. Brannan's Neg. Inst. Law (4th Ed.) § 42, p. 376, and cases cited in the footnote; 8 C. J. § 1011, p. 730, and cases cited in the footnote. Moreover, after the note had been altered and when it was received by plaintiff, it was payable "to the order of the Stockgrowers Bank & Trust Co., Pocatello, Idaho, the Pingree National Bank of Ogden, Utah." After the alteration, the note thus appears to be payable to two payees. Evidence was offered and received tending to show that, when the note was delivered to plaintiff, it was indorsed by the Stockgrowers' Bank & Trust Company, but there is no evidence that it was ever indorsed by the Pingree National Bank. When a note payable to two payees is indorsed by only one of such payees, it is not complete and regular on its face. *Karsner* v. *Cooper*, 195 Ky. 8, 241 S. W. 346, 25 A. L. R. 159. Comp. Laws Utah 1917, § 4160, provides:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration and subsequent endorsers. But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

It appearing that plaintiff was not a due course holder of the altered note, it follows that such note was avoided in the hands of plaintiff.

It is further urged on behalf of defendant Wright that, not only is plaintiff precluded from a recovery on the altered note, but likewise plaintiff cannot recover on the the-

ory that the original obligation for the note was given or assigned to it. It is thus urged that the alteration of the note not only avoided the note, but also discharged the obligation for which the note was given, so that the National City Bank had no claim against Wright either on account of the $30,-000 altered note or on account of the obligation for which such note was given to assign to any one. In support of such contention, we are referred to 1 Joyce, Defenses to Commercial Paper (2d Ed.) § 270, p. 353, and the cases there cited. The text referred to reads as follows:

"The material, intentional and fraudulent alteration of a bill or note by the payee or holder will not only be a defense to an action on the instrument as altered, but also to an action on the original indebtedness; and the rule also applies to an indorsee after maturity, as he stands in the same position as his indorser in respect to such alteration."

The rule announced in the text is supported by the great weight of authority. A list of the cases supporting the text will be found in a footnote to the text. It has been held, however, that an altered instrument should not be held invalid in the case of an innocent purchaser for value, even though such purchaser is not due course holder; *Shepard* v. *Whetstone*, 51 Iowa 457, 1 N. W. 753, 33 Am. Rep. 143.

That the alteration of Wright's renewal note was a material alteration admits of no doubt. Comp. Laws Utah 1917, § 4161. That the alteration was intentionally made affirmatively appears. No claim is made that Pingree ■ was not acting within the scope of his authority when he directed that the alteration be made. There is, however, no finding by the trial court that Wright's renewal note was altered with any fraudulent intention. While a material alteration of a note is a defense to an action on the instrument itself, in order that such an alteration may be a bar to recovery on the original debt or consideration, it must appear that the alteration was made with fraudulent intent. 1 R. C. L. p. 1005, § 36; 1 Joyce, Defenses to Com-

mercial Paper (2d Ed.) § 271, p. 354; *McClure* v. *Little*, 15 Utah 379, 49 P. 298, 62 Am. St. Rep. 938. Nor can it be said that the evidence necessarily leads to the conclusion that the alteration of Wright's renewal note was fraudulently made. If defendant Wright is correct in his claim that the National City Bank agreed to accept whatever might be received from the Hooper Sugar Company on account of its note in favor of Wright in full payment of the note which the National City Bank held against Wright, it might well be argued that the alteration of Wright's renewal note was not calculated or intended to perpetrate any fraud upon Wright. Pingree testified that Wright gave him authority over the telephone to make the alterations that were made. It may be that the trier of the fact was of the opinion that a conversation similar to the one testified to by Pingree was actually had over the telephone, but that Pingree misunderstood the conversation. Be that as it may, this being an action at law, it is the province of the trier of the facts and not of an appellate court to find the facts where there is a conflict in the evidence or where different inferences may be drawn from the facts. Thus, unless there was an intention to defraud Wright when his renewal note was altered, he is not relieved from responding to the owner of the obligation for which the altered note was given. The transfer of the altered note to the plaintiff corporation apparently vested in plaintiff either title to or a lien upon, not not only the altered note, but also the obligation for which the altered note was given. We have thus far pursued the theory, as we understand counsel for defendant Wright, upon which Wright seeks to defeat plaintiff's action on the note set out in plaintiff's complaint. Thus it is contended on behalf of Wright that, if plaintiff is not entitled to recover on the altered renewal note executed by Wright or the obligation or consideration for which such note was given, then plaintiff is precluded from recovery on the note sued upon in this action. It is argued that, as the note sued upon in this action was received as collateral security for the pay-

ment of the altered note, if the principal obligation is shown to have no legal existence, the collateral security for the payment of the principal obligation must also be without any legal effect.

We shall not further digress to discuss such theory. Suffice it to say that the findings of fact made by the trial court do not support a conclusion of law that the principal obligation has no legal existence. In the absence of a finding that there was an intention to defraud Wright when his note was altered. Wright remains liable on his original obligation independent of the altered note.

Whatever may be the fact as to the motive or intent with which Pingree altered Wright's renewal note, we do not regard such fact as of controlling importance in reaching a proper determination of this action. This action is not to recover on the altered note. Assuming that the National City Bank did not have title to or a lien upon the note upon which this action is brought, it is of controlling importance to determine whether or not the plaintiff is a due course holder of such note.

It was urged in the trial court that the note sued upon is not negotiable in form because of the provision in the note that "the makers and endorsers * * * agree that this note may be extended in whole or in part without their consent. The great weight of authority is to the effect that these or similar words do not destroy the negotiability of a promissory note. Brannan's Neg. Inst. Law (4th Ed.) pp. 870, 871, and cases there cited.

The note sued upon is complete and regular on its face. No claim is made that it is not. Did the plaintiff become the holder of the note before it was overdue and without notice that it had been previously dishonored, if such were the fact? No claim is made that the note sued upon was ever dishonored. It is earnestly argued by Wright that the note was overdue at the time it was received by plaintiff as well as at the time it was transmitted

to the National City Bank. It will be observed that the note is dated September 5, 1919, and was made payable six months after date. It is obvious that when the note was transmitted to the National City Bank on September 2, 1920, it was overdue as to the maker, Hooper Sugar Company. Plaintiff relies upon the provisions of Comp. Laws Utah 1917, §4036, in support of its contention that the note was not overdue when received by plaintiff as to Wright. It is there provided:

"An instrument is payable on demand: 1. Where it is expressed to be payable on demand, or at sight or on presentation; or 2. in which no time for payment is expressed. Where an instrument is issued, accepted, or indorsed when overdue, it is, as regards the person so issuing, accepting, or indorsing it, payable on demand."

This language is so plain that when applied to the facts in the instant case it is open to but one construction. When Wright indorsed the note and delivered it to the National City Bank after its maturity date, such note as to Wright became a demand note. As a demand note it did not become overdue as to Wright until a reasonable length of time after it was indorsed by him. Comp. Laws Utah 1917, § 4089. The rule was the same under the law merchant. 8 C. J. 406, § 601, and cases collected in a footnote. The cases there cited, however, deal with questions of demand and notice of nonpayment and protest. In an article entitled "Rights in Overdue Paper," 31 Harvard Law Review, p. 1104, at page 1125, the law applicable to the instant case is thus stated:

"The instrument takes on a new lease of life with respect to an indorser after maturity, and his equitable defenses are not let in until a reasonable time after he indorses, although the paper is apparently overdue. The same is true of a drawer or even a maker or acceptor who becomes bound after the date of payment. The promise is to pay on demand. A contract after maturity has a special maturity of its own, i. e. a reasonable time after execution, and bona fide purchasers within that time will be protected from all equities of the party who signed, even equitable defenses."

The note here sued upon was indorsed by Wright on September 2, 1920. On the following day it was received by the National City Bank and on the same day transmitted to the Stockgrowers' Bank & Trust Company. Plaintiff became the holder of the note on October 11, 1920. When Wright indorsed the note after maturity, he gave it a second maturity date as to him, namely a reasonable time after the transfer. Plaintiff became such holder within that reasonable time, and, as regards Wright, plaintiff received the note free from any equities of Wright founded upon the mere fact that the note appeared to be overdue. Even though it should be conceded that the Hooper Sugar Company note was overdue as to both Wright and the Hooper Sugar Company when it was received by plaintiff, such fact standing alone does not aid Wright in his claim that he is still the owner and entitled to the possession of such note. Wright deliberately vested Frank Pingree with all the indicia of ownership, and having done so, he may not be heard to claim as against a bona fide holder for value that he did not part with title. Such we conceive to be the rule announced by the weight of authority and supported by the better reasoning. *Justice* v. *Stoneceipher*, 267 Ill. 448, 108 N. E. 722; *Gardner* v. *Beacon Trust Co.*, 190 Mass. 27, 76 N. E. 455, 2 L. R. A. (N. S.) 767, 112 Am. St. Rep. 303, 5 Ann. Cas. 501; *Etheridge* v. *Gallagher*, 55 Miss. 458, at 469; *Wolf* v. *American Tr. & Svgs. Bank* (C. C. A.) 214 F. 761; *Connell* v. *Bliss*, 52 Me. 476; *Eversole* v. *Maull*, 50 Md. 95; *Cochran* v. *Stewart*, 57 Minn. 499, 59 N. W. 543; *Lee* v. *Turner*, 89 Mo. 489, 14 S. W. 505; *Bradford* v. *Williams*, 91 N. C. 7; *Kempner* v. *Huddleston*, 90 Tex. 182, 37 S. W. 1066; *Moore* v. *Moore*, 112 Ind. 149, 13 N. E. 673, 2 Am. St. Rep. 170. The same rule has been applied to nonnegotiable promissory notes. 1 Joyce, Defenses to Commercial Paper (2d Ed.) § 571, p. 772. The cases announcing other rules as to the rights in overdue paper will be found collected in a appendix at the end of the article in Harvard Law Review, supra. Wright must fail in his

claim that the plaintiff received the note after it was over-due.

Did plaintiff take the note sued upon in good faith and for value? So far as appears, no claim is made that plaintiff did not take the note in good faith. The only evidence, and the only finding that remotely touch the question of lack of good faith on the part of plaintiff when it received the note sued upon is the fact that it was found in bad company. It was received by plaintiff with the altered note. The conclusions of law clearly show that the trial court did not dispose of this action on the theory that plaintiff was guilty of any bad faith in accepting the note sued upon. We therefore refrain from discussing the law as to what constitutes good faith as this term is used in the Negotiable Instruments Law. An extensive discussion of that subject will be found in a recent decision of this court. *National Bank of the Republic* v. *Beckstead* (Utah) 250 P. 1033.

The plaintiff contends that the trial court found that it was a purchaser of the note sued upon in this action for value. Counsel for Wright argues that no such finding was made by the trial court. The only finding upon this point which so sharply divides counsel is as follows:

"That on or about the 11th day of October, 1920, the Stockgrowers Bank & Trust Company, of Pocatello, Idaho, transmitted and transferred to the plaintiff said note of defendant Parley T. Wright, bearing date of June 6, 1920, by the following letter: 'October 11, 1920, Idaho State Bank, Twin Falls, Idaho. Gentlemen: We are enclosing herewith note of Parley T. Wright, $30,000.00, to which is attached as collateral stock Certificate No. 152, for 375 shares of the Hooper Sugar Company. This note is to be held by you as collateral in connection with U. S. Bonds borrowed in the amount of $20,000.00. Yours very truly, A. Cashier, SJT:Ba. Enc.' in which letter was enclosed the promissory note sued upon in this action, and that plaintiff came into possession of said note sued upon this action in the manner aforesaid."

Obviously the foregoing finding does not determine whether value was or was not given by plaintiff for the note sued upon in this action.

Did plaintiff at the time the note sued upon was negotiated to it have any notice of any infirmity in the instrument or defect in the title of the person negotiating it? Comp. Laws Utah 1917, § 4090, provides as follows:

"To constitute a notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

A long list of cases construing the foregoing provision will be found collected in Brannan's Neg. Inst. Law (4th Ed.) p. 444 et seq. The case of *National Bank of the Republic* v. *Beckstead,* supra, has settled the law in this jurisdiction.

There is no claim made that plaintiff had actual knowledge of any defect in the title of the Stockgrowers' Bank & Trust Company when the note was delivered to plaintiff. Can it be said that it was bad faith on the part of plaintiff to take either the altered note or the note upon which this action is founded? We are of the opinion that under the authorities the question will admit of but one answer, namely, that such fact alone does not establish bad faith in taking such instrument. This is especially the case as to the note sued upon in this action. By indorsing the Hooper Sugar Company note in blank and transmitting it to the National City Bank, Wright clothed such bank with all the indicia of title without limitation. The fact that the Hooper Sugar Company note so indorsed in blank appeared to be collateral security for the altered note did not limit the apparent title of the holder of the indorsed note to mere security for the payment of the altered note. Thus it will be seen that the altered note provides that it is "collateral

security for this note and of any and all claims, demands, or other indebtedness due or not due by ——— to said bank at maturity of this note. * * * With authority to sell the same or so much thereof as may be necessary, at public or private sale, at the option of said bank, on the failure to pay either principal or interest on any of said claims when due, and without notice, and with the right of said bank or the holder of this note to become purchaser at the sale." The fact that the indorsed note was made collateral security for the altered note did not change the blank indorsement to either a restrictive, qualified, or conditional indorsement. To hold otherwise would be to distort the legal effect of the blank indorsement.

The plaintiff was denied the right to recover in this action upon the grounds as stated in the conclusions of law:

"That the National City Bank acquired no title to the promissory note sued upon in this action, but received the same wholly and solely for the purpose of delivering the same to the Bankers Trust Company as trustee, and not with any authority or right to negotiate the same, and that the plaintiff in this action acquired no better title to the said note than said National City Bank.

"That the plaintiff could not maintain an action upon the promissory note of June 6, 1920, of defendant Parley T. Wright, by reason of the fact that the same was materially altered without the knowledge or consent of said defendant Parley T. Wright, and that consequently the plaintiff can maintain no action upon the note sued upon in this action for the reason that the same was delivered by the National City Bank through the Stockgrowers Bank & Trust Company to the plaintiff merely as collateral security for said note dated June 6, 1920."

It will thus be seen that the trial court denied plaintiff the right to recover against Wright upon two grounds: (1) That the indorsed note was overdue when it was delivered to plaintiff, and hence plaintiff did not acquire any right other than or in addition to such right as was held by the National City Bank; as the National City Bank had no right or title in the note, the plaintiff acquired none. (2) That, because the note executed by Wright in favor of

the National City Bank was materially altered, plaintiff is precluded from recovery on the note sued upon in this action.

For the reasons stated, we are of the opinion that the facts found and the conclusions of law made by the trial court do not support the judgment rendered.

In our discussion of whether or not plaintiff is a holder in due course, we have not overlooked the fact that "every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course." Comp. Laws Utah 1917, § 4093. It may be open to some question whether plaintiff has discharged the burden thus cast upon it. The determination of that question, however, in the first instance is a matter for the trial court. Suffice it to say that in this case the trial court has not made a finding upon such question.

Plaintiff contends that upon the record before us judgment should have been rendered in its favor. The trial court having found that the National City Bank had no title to the note sued upon in this action when it was negotiated, plaintiff is precluded from recovering upon the note unless it is found that plaintiff is a bona fide holder of such note for value. The trial court made no such finding.

There is no claim made and there is no evidence in the record that plaintiff purchased an absolute title to the note here sued upon. The most that can be said for plaintiff's evidence is that it tends to support a lien in favor of plaintiff on the note involved in this action as security for the return of the $20,000 United States bonds which plaintiff claims it loaned to the Stockgrowers' Bank & Trust Company. The trial court found that the National City Bank never had title to the note indorsed by Wright. In such case the limit of plaintiff's recovery is the value

of such bonds, if any, which have not been returned to plaintiff. 1 Joyce, Defenses to Commercial Paper (2d Ed.) § 562, p. 761, and cases there cited; Comp. Laws Utah 1917, § 4055. The trial court made no finding that bonds were loaned by plaintiff to the Stockgrowers' Bank & Trust Company nor as to what was the value of such bonds, if any. Clearly, on this state of the record plaintiff is not entitled to a judgment in its favor.

The contention is made on behalf of defendant Wright, however, that the complaint does not allege that plaintiff is a holder in due course of the note sued upon, and therefore no issue is raised as to whether or not plaintiff is or is not a bona fide holder for value of such note. The complaint does allege "that the plaintiff is now the owner and holder of said note," meaning the note indorsed by Wright and upon which this action is founded. No question was raised in the trial court that the complaint is uncertain or ambiguous in not alleging the kind of holder of the note plaintiff claimed to be. Such question is raised for the first time in the brief filed on behalf of Wright. In the absence of a timely attack upon the complaint in such respect, Wright should not be heard to complain about any ambiguity or uncertainty of the complaint for the first time in this court. Plaintiff having alleged that it was the owner and holder of the note sued upon and Wright having been content with a mere denial of such allegation, an issue was raised upon the kind of title, if any, that was held by plaintiff.

From what has been said, it follows that the judgment rendered in this action should be, and the same is hereby, reversed. The cause is remanded to the district court of Weber county, with directions to grant a new trial. Appellant is awarded its costs.

THURMAN, C. J., and CHERRY, STRAUP, and GIDEON, JJ., concur.