## GARNER v. THOMAS et al.

No. 5917.   Decided January 17, 1938.   (75 P. [2d] 168.)

Rehearing Denied April 20, 1938.

For opinion denying rehearing see 94 Utah 295, 78 P. 2d 529.

*Cyrus G. Gatrell,* of Salt Lake City, for appellants.

*Thatcher & Young,* of Ogden, for respondent.

LARSON, Justice.

This is an appeal from the district court of Weber county and involves a claim of error in the description of lands covered by a mortgage, and a claimed novation or alteration in the notes secured by the mortgage. On November 12, 1919, Henry J. Garner and defendant George S. Thomas entered into a written contract for the sale of Garner's 60-acre farm to Thomas for $11,500, to be paid as follows: "Amt to be paid from federal loan 6000.00. Not less than 5000.00 soon as loan is made. Bal on second mortgage on property which covers federal loan $5500.00 five thousand five hundred for five years at 7% interest per annum annually." In May, 1920, a federal farm loan for $6,000 was secured and the defendants executed in favor of Garner

five promissory notes aggregating $5,310, payable one each year for five years, interest at 7 per cent, and a mortgage to secure the same covering the farm and some other lands of George Thomas, and one lot in Plain City, the home, title to which was in the name of Mrs. Thomas. At the time these papers were finally executed, a Mrs. Hancock, sister of Mrs. Thomas, paid Garner $1,000 cash from her savings account for the benefit of the purchasers. There was thus put into the purchase $6,000 federal loan, $5,310 secured notes, and $1,000 cash, a total of $12,310. The two notes maturing first, one for $800 and another for $1,200 were paid in full, and various sums paid as interest on the balances due. On November 1, 1933, Henry J. Garner brought suit to recover on the three remaining notes, two for $1,000 each and the other for $1,310, with interest at 8 per cent per annum, and for foreclosure of the mortgage. Defendants answered, alleging that since their execution and delivery the notes had been altered to read with interest at 8 per cent per annum instead of 7 per cent; and also that the lot of Mrs. Thomas, the home above referred to, had, by inadvertence, been included in the mortgage, or had been inserted after the execution of the mortgage. Defendants prayed that the notes and mortgage be canceled. Plaintiff in reply denied any alteration in the notes or mortgage, denied the home (lot 1) was included in the mortgage by "any inadvertence, accident or mistake," and alleged that the interest rate in the notes was changed from 7 to 8 per cent "with the full knowledge and consent of the defendants." Just after the action was commenced, plaintiff died, and his executor was substituted as plaintiff. Upon the trial had in November, 1936, the court entered judgment for plaintiff, and defendants appeal.

The following questions are presented: (1) Does the record show a material alteration of the notes without the consent of the defendants? (2) If so, what effect does it have on the judgment? (3) Does the record show that the home of Mrs. Thomas (lot 1) was erroneously and inad-

vertently included in the mortgage? (4) If so, to what extent does it affect the judgment? We shall answer them in order.

(1) Four of the five notes are in evidence—the three upon which plaintiff's action is based, and the $1,200 note that had been paid and canceled. The first note to mature, for $800, is not in evidence, but is conceded to have been paid. The notes, on printed forms with the blank spaces filled in, all read "with interest at the rate of ■ seven per cent per annum," the word seven being in ink and the other words printed. The mortgage recites that the notes carry 7 per cent interest, as does also the written agreement for the sale made prior to the execution of the notes and mortgage. On the $1,200 note the ink written word seven has been crossed out and Eight written above it in ink. On the next note to mature the same change is made. On the other two notes the word seven is not crossed out, but over it in pencil is the figure "8%." It is conceded that the word Eight on the two notes and the figure "8%" on the other two notes are in handwriting different from the other script on the face of the notes; that it is not in defendants' handwriting, and probably not plaintiff's script. It is also admitted that all payments made and credited on these notes were credited on an 8 per cent basis. In a book in evidence, kept in the handwriting of the payee, Garner, and purporting to show the payments made by defendants commencing in June, 1922, all interest charges are made at 8 per cent. On another exhibit of plaintiff a statement in the handwriting of the payee under date of November 22, 1922, is the statement, "If principal not paid at date, I will carry notes if interest is paid in advance @ 8% per annum on full amount of notes, until paid.  *  *  *" Plaintiff testified that on one occasion his father, the payee, had told him that it had been agreed with Thomas that, since the notes were not paid as due, the interest should be 8 per cent. There is no testimony from Thomas in regard to the matter; no denial of this statement. It appears from the

brief that counsel for defendants took the view that, since Garner was deceased, Mr. Thomas would not be permitted to testify in regard to the matter. In this, counsel was in error because, the executor having opened up this alleged conversation and agreement, Mr. Thomas could testify as to that matter and explain or deny the same. There is no evidence at all about Mrs. Thomas having any knowledge thereof. Thomas testified that he could not figure interest, and he had always paid what Garner claimed was due. That is all the evidence on the matter.

The evidence, though meager, sustains the finding of the trial court, that the changing of the rate of interest on the notes from 7 to 8 per cent was done after execution and delivery of the notes, and was done by or at the instance of Mr. Garner, the payee. We are also of the opinion that the evidence sustains the finding that such change was made with the knowledge and approval of the defendant George S. Thomas, but was without the knowledge, consent, or approval of the defendant Clara L. Thomas.

(2) What then is the effect of such change or alteration of the notes? As to the two notes where the penciled figure "8%" is written above the word "seven" but the "seven" not scratched out, there is no alteration. The notes still on their face call for the 7 per cent as originally agreed upon. The other notes, where the word "seven" was scratched out and the word "Eight" written in ink above it, were thereby changed in their terms and tenor and this constitutes alteration. That such alteration constitutes a material change cannot be doubted. *Idaho State Bank* v. *Hooper Sugar Co.*, 74 Utah 24, 276 P. 659, 68 A. L. R. 969. That a material alteration in a note voids it in the hands of the one who makes the change as to all parties then liable thereon who do not consent thereto, is also too well established to require argument. Section 61-1-126, R. S. Utah 1933; *Idaho State Bank* v. *Hooper Sugar Co.,* supra; *Rice* v. *Jones,* 102 Okl. 30, 225 P. 958; 5 Page on Contracts 5481; *Johnson* v. *Reed,* 231 Ala. 525, 165 So. 759;

*Eastman Nat. Bank* v. *Naylor*, 130 Okl. 229, 266 P. 778; *Kauffman* v. *Logan*, 187 Iowa 670, 174 N. W. 366. It follows, therefore, that the note for $1,000 dated May 22, 1920, and due December 22, 1922, is void as to the defendant Clara L. Thomas, but valid as to defendant George S. Thomas. The other two notes sued upon, not having been altered, are valid against both defendants, but as to Mrs. Thomas only at 7 per cent interest.

(3) What does the record show with respect to the inclusion of the home of Mrs. Thomas in the mortgaged property? The original memorandum agreement, made six months before the mortgage, signed by Mr. Thomas but not his wife, merely recites the sale of a 60-acre farm for $11,500 to be paid from a federal farm loan to be ▬ secured, and the balance by notes secured by "second mortgage on property which covers federal loan." The mortgage itself covers the 60-acre farm and several other tracts of land, including lots 1 and 2 in block 20, plat "A," of Plain City survey. On January 22, 1920, lot 1 was deeded by Mr. Thomas to his wife, Clara L. Thomas; March 8, 1920, the mortgage was made to the Federal Land Bank and covers all the Thomas property, including lot 1; May 22, 1920, the mortgage to Garner was made covering the same property as the federal loan mortgage. Mr. Garner, the mortgagee, having died, the defendants could not testify in regard to this matter, but Mrs. Hancock, a sister of Mrs. Thomas, testified that she paid Garner $1,000 cash from her savings to have lot 1, the home in the name of Mrs. Thomas, eliminated from, or left out of, the mortgage. That Mrs. Hancock paid the $1,000 is not disputed; nor is her explanation as to why she paid this $1,000 disputed or contradicted. There is no attempt made to show or explain why Mrs. Hancock paid this $1,000 except her explanation; she was not a party to the sale, the contract, or the obligation; she received no consideration for her money except the elimination of her sister's home from the mortgage. Her testimony rings true; there are other facts persuasive of

its verity. Not being disputed or contradicted in any way, and no reason appearing for doubting its correctness, we conclude that the $1,000 paid by Mrs. Hancock was so paid, to have the home of Mrs. Thomas (lot 1) deleted from, or left out of, the mortgage; and that it was received by Mr. Garner under such agreement and understanding.

While the finding and conclusion just stated are based upon the testimony and evidence above set forth, we may add that further computations, analyses, and deductions from the facts in the record tend to sustain, uphold, and confirm such holding. For the information of the parties, counsel, and the trial court, we indicate some of them. The purchase price was $11,500. Defendants paid, at the time the mortgage and notes were executed, $6,000 from the federal loan, $1,000 from Mrs. Hancock, and $5,310 in notes secured by mortgage—total $12,310, or $810 more than the purchase price of $11,500. No explanation is given in the record of this difference but counsel for respondent argues that it must have been used up in expenses and interest from date of contract to the date of the mortgage. This argument is predicated upon a sheet of paper in the handwriting of Garner, purporting to be a statement of account with George S. Thomas showing payments made. There is no evidence of the time or conditions under which it was prepared, and it was received in evidence as Exhibit G over defendants' objection. The first entry reads, "May 22, 1920, Sale of Farm, 2nd mortgage and notes $11,500. To interest 6-1/3 mo 8% $485.55." Respondent argues that here is proof that $485.55 of the $810 was at the time of its payment applied on interest then due, and the balance of $324.45 must be presumed to have been expenses in closing the loans. Assuming that Exhibit G was properly received in evidence, since it is not attacked on appeal, it militates against respondent's position because, under his own allegations, claims, and proofs, the change in interest rate was not made until November, 1922, so such charge at 8 per cent could not have been made and collected at the time of making

the notes. Following out respondent's way of accounting for this money, we have the following possible deductions: Charges for stock in loan association, $300. (This is provided by the Federal Act, 12 U. S. C. A. § 733, and may be paid at time of loan, or included in amortization payments— the record here makes no reference to it at all, but is injected in respondent's brief to account for where the money went.) Assuming this was deducted from the federal loan, we still have $810 minus $300 leaving a balance of $510 overpaid. While the record is silent, according to respondent's brief, there would be $24.45 available for loan expenses. If we deduct that, we still have an overpayment of $485.55 unaccounted for. Under the contract made in November, 1919, Garner was to receive in cash not less than $5,000 and up to $6,000 from federal loan and the balance in notes. Under the strict terms thereof, that would leave the following figures: $11,500 (sale price) less loan of $6,000, minus $300 stock deduction and $24.45 expenses, or $5,675.55, leaves $5,824.45 to be evidenced by notes. Instead, Garner took only $5,310 in notes or 514.45 less than obligated to take under his contract. If Garner was not entitled to interest on his farm from November 22, 1919, to May 22, 1920, and it may be doubted that he was since he had the beneficial possession and usufruct of the farm until April 1, 1920, and figured at 8 per cent as he charged all his interest instead of the 7 per cent provided, he should have taken $485.55 more in notes to cover the same. Add this to the $514.45 above, shown in notes, makes $1,000 which Garner received in cash from Mrs. Hancock to release the home (lot 1) from the mortgage on the debt, rather than keep the home in the mortgage and take $1,000 more in notes.

(4) The judgment and decree of foreclosure are erroneous. Judgment should be entered against Clara L. Thomas only on the two notes for $1,000 and $1,310, respectively, with interest thereon at 7 per cent. Against George S. Thomas, plaintiff may have judgment on the three notes for $1,000, $1,000 and $1,310 with interest at 7 per cent

until November 22, 1922, and at 8 per cent from November 22, 1922. The interest computations should be figured so as to give defendants credit for the amount paid on these notes, and also for any payments credited as interest paid on the two canceled notes in excess of 7 per cent. The decree of foreclosure should provide that lot 1 of block 20, plat "A" of Plain City survey in Weber county was inadvertently and erroneously included in the description of the mortgaged property, and should be deleted therefrom and said lot cleared of any lien of the mortgage; that the decree order the sale of all the property except said lot 1, according to law, to satisfy the judgment.

The judgment is reversed, and the cause remanded to the district court of Weber county, with directions to recast its findings of fact, conclusions of law, judgment, and decree in accordance with the views herein expressed. Costs to appellants.

FOLLAND, C. J., and HANSON, MOFFAT, and WOLFE, JJ., concur.